Hearing adjourned 2:11 p.m.

In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR 1999–2000 # 28,

John S. Outcelt, Petitioner,

v.

Douglas Bruce and Jeffrey Wright, Respondents,

and

Victoria Buckley, Rebecca Lennahan and Richard Westfall, Title Board.

No. 98SA485.

Supreme Court of Colorado, En Banc.

March 22, 1999.

Susan E. Burch, Denver, Colorado, Attorney for Petitioner.

Douglas Bruce, Pro Se, Colorado Springs, Colorado.

No appearance on behalf of Respondent Jeffrey Wright.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, Christine M. Arguello, Deputy Attorney General, Maurice G. Knaizer, Deputy Attorney

General, State Services Section, Denver, Colorado, Attorneys for Title Board.

PER CURIAM.

Petitioner, John S. Outcelt, brought this original proceeding under section 1–40–107(2), 1 C.R.S. (1998). Petitioner seeks review of the Title Board's (Board) action in fixing the title, ballot title and submission clause, and summary (titles and summaries) for a proposed ballot initiative designated "1999–2000 # 28" (Initiative # 28).[1] Petitioner argues that this initiative is unconstitutional because: (1) the initiative contains more than one subject; (2) the titles and summaries fail to express the true intent and meaning of the initiative; (3) the titles and summaries are misleading and fail to reflect the true fiscal impact of the proposal; (4) the titles and summaries fail to conform with Article X, section 20(3)(c) of the Colorado Constitution; and (5) the titles and summaries contain a prejudicial catch phrase.

Notably, Initiative # 28 is virtually identical to Initiative # 25 which we reviewed in *In re Proposed Initiative for 1999–2000 No. 25*, 974 P.2d 458, 459 (Colo.1999). In fact, the only difference between Initiative # 28 and Initiative # 25 is the amount of the annual tax cut. As such, our decision in *In re Proposed Initiative for 1999–2000 No. 25* is directly controlling here.

As the Board failed to apply our case law, *see* § 1–40–106.5(3), 1 C.R.S. (1998), we remand this matter to the Board with directions to strike the titles and summaries and to return Initiative # 28 to its proponent.

## APPENDIX A

### PROPOSED INITIATIVE NUMBER "1999–2000 # 28" [2]

The title as designated and fixed by the Board is as follows:

AN AMENDMENT TO THE COLORADO CONSTITUTION ESTABLISHING A $20 TAX CUT TO LOWER EACH 2001 STATE AND LOCAL TAX BILL FOR EACH UTILITY CUSTOMER TAX AND

FRANCHISE CHARGE, VEHICLE OWNERSHIP TAX, AND SPECIFIED INCOME TAX AND PROPERTY TAX, AND, IN CONNECTION THEREWITH, INCREASING THE TAX CUT $20 THE NEXT YEAR, AND $40 YEARLY THEREAFTER; REQUIRING STATE REPLACEMENT OF AFFECTED LOCAL REVENUE WHEN YEARLY STATE REVENUE INCREASES $200 MILLION OR MORE ABOVE THAT YEAR'S INCREASE IN LOCAL REVENUE REPLACEMENT; REQUIRING YEARLY STATE AUDITS OF TAX AND SPENDING LIMITS; SPECIFYING RULES FOR CONSTRUING THIS AMENDMENT; STATING THAT THIS AMENDMENT DOES NOT REQUIRE ANY SPECIFIC BALLOT ISSUE TITLE, DOES NOT IMPAIR BINDING CONTRACTS OR DEBTS EXISTING IN 2000, AND DOES NOT INCREASE STATE OR LOCAL TAX OR SPENDING LIMITS; AND AWARDING MANDATORY ATTORNEY FEES AND COSTS TO SUCCESSFUL PLAINTIFFS ONLY.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION ESTABLISHING A $20 TAX CUT TO LOWER EACH 2001 STATE AND LOCAL TAX BILL FOR EACH UTILITY CUSTOMER TAX AND FRANCHISE CHARGE, VEHICLE OWNERSHIP TAX, AND SPECIFIED INCOME TAX AND PROPERTY TAX, AND, IN CONNECTION THEREWITH, INCREASING THE TAX CUT $20 THE NEXT YEAR, AND $40 YEARLY THEREAFTER; REQUIRING STATE REPLACEMENT OF AFFECTED LOCAL REVENUE WHEN YEARLY STATE REVENUE INCREASES $200 MILLION OR MORE ABOVE THAT YEAR'S INCREASE IN LOCAL REVENUE REPLACEMENT; REQUIRING YEARLY STATE AUDITS OF TAX AND SPENDING LIMITS; SPECIFYING

---

1. The title and summary of Initiative # 28 are attached hereto as APPENDIX A.

2. Amend TABOR.

RULES FOR CONSTRUING THIS AMENDMENT; STATING THAT THIS AMENDMENT DOES NOT REQUIRE ANY SPECIFIC BALLOT ISSUE TITLE, DOES NOT IMPAIR BINDING CONTRACTS OR DEBTS EXISTING IN 2000, AND DOES NOT INCREASE STATE OR LOCAL TAX OR SPENDING LIMITS; AND AWARDING MANDATORY ATTORNEY FEES AND COSTS TO SUCCESSFUL PLAINTIFFS ONLY?

The summary prepared by the Board is as follows:

This measure amends article X, section 20 of the Colorado Constitution, by adding a new paragraph (d) to subsection (8). A $20 tax cut increased $20 the next year and $40 each year thereafter, would lower each state and local tax bill for each utility customer tax and franchise charge; vehicle ownership tax; yearly income tax; property tax spent on human and health services, economic development, retirement benefits, enterprises, authorities, courts, jails, libraries, schools, elections, and district attorney, assessor, financial, and legal offices combined; income or property tax equal to the combined yearly cost of lease purchases, unbonded obligations not paid and not offset by a pledged cash reserve in the year created, tax-increment financing, tax and spending and future local debt increases approved by voters after 1992 that last more than 10 years after approval, excess revenue for more than one year per election, revenue increases voter-approved after 2000 above a fixed tax rate and a fixed maximum number of dollars yearly, and tax credits and rebates unless voter-approved, for overpayment, or for general refunds of excess or illegal revenue; income or property tax equal to the prior year's revenue above ninety-nine percent of its spending limits; income or property tax equal to yearly revenue from a tax rate increased or a spending limit percentage, computed since 1992, exceeded from 1993 through 2000, except by a fixed tax rate and a voter-approved fixed maximum number of dollars yearly; income or property tax equal to the yearly revenue of each authority wholly or partly created by or related to the district but outside fiscal year spending limits, computed since 1992, and the yearly cost of all state and local tax and business charge exemptions related to each authority and enterprise; and remaining business personal property tax. The initial tax cut of $20 is applied to tax bills for tax year 2001.

The measure specifies that it does not require any specific ballot issue title or content, does not impair binding contracts or debts existing in 2000, and does not increase state or local tax or spending limits. The state is required to replace the local government revenue affected by the tax cuts established by this measure when the state has a fiscal year revenue increase from all sources of $200 million or more above that year's increase in the amount of local revenue to be replaced. The state is required to audit each tax and spending limit yearly. The measure provides that it is to be strictly construed and not balanced or harmonized with existing provisions. Substantial compliance with the measure is not sufficient. All attorney fees and costs are always awarded to successful plaintiffs only who seek to enforce this new measure.

*State impacts.* The state income tax cut would reduce the growth in state general fund revenue by $256,648,000 during the three-year period beginning with fiscal year 2001–02. The cut in the state utility customer tax and other income tax cuts contained in the measure would reduce the growth in state general fund revenue by an indeterminate amount during the same three-year period.

The state would incur costs of at least $1,100,000 to administer the tax cuts allowed by this measure. In addition, the state may incur costs for possible annual audits, but the amount of these additional costs is indeterminate.

Assuming the state's revenue growth is sufficient to require state replacement of local government revenue losses resulting from the measure, the measure would have a significant but indeterminate negative fiscal impact on the state. Assuming no state replacement of local revenue, the measure would have a net negative state fiscal impact of at least $241,230,000 during the three-year

period beginning with fiscal year 2001–02. The figure does not include the amount of negative fiscal impact that will occur but is indeterminate at this time.

*Local impacts.* If the state's revenue growth is not sufficient to require state replacement of local government revenue lost due to the measure, the measure would have a significant negative fiscal impact on local governments. Even if the state replaces lost local government revenues, the measure may have a negative fiscal impact on some local governments, since the measure does not increase local tax and spending limits and revenues are currently being collected outside those limits. This measure may increase local government costs due to possible accounting and audit costs, attorney fees and costs that must be mandatorily awarded, and possible increased litigation. The amount of these additional local costs is indeterminate.

October 21, 1998

Hearing adjourned 3:12 p.m.

December 2, 1998: *Motion for Rehearing Denied*

Adjourned 2:12 p.m.