In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR 1999–2000 # 38,

**John S. Outcelt, Petitioner,**

v.

**Douglas Bruce and Jeffrey Wright, Respondents,**

and

**Victoria Buckley, Rebecca Lennahan, and Richard Westfall, Title Board.**

**No. 99SA12.**

Supreme Court of Colorado,
En Banc.

March 22, 1999.

Susan E. Burch, Denver, Colorado, Attorney, for Petitioner.

Douglas Bruce, Pro Se, Colorado Springs, Colorado.

No appearance by or on behalf of Respondent Jeffrey Wright.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, Christine M. Arguello, Deputy Attorney General, Maurice G. Knaizer, Deputy Attorney General, State Services Section, Denver, Colorado, Attorneys for Title Board.

PER CURIAM

Petitioner, John S. Outcelt, brought this original proceeding under section 1–40–107(2), 1 C.R.S. (1998). Petitioner seeks review of the Title Board's action in fixing the title, ballot title and submission clause, and summary ("titles and summary") for a proposed ballot initiative designated "1999–2000 # 38" (Initiative # 38).[1] Petitioner argues: (1) that this proposed initiative violates the constitutional single-subject requirement because it contains more than one subject, including subjects already found by this court to constitute impermissible multiple subjects; (2) that this proposed initiative fails to con-

1. The text of Initiative # 38 and the titles and summary designated and fixed by the Board are attached hereto as an appendix.

form to section 20(3)(c) of article X of the Colorado Constitution; and (3) that the titles and summary fail to clearly express the meaning of the initiative. We agree with Petitioner's first and third contentions. Accordingly, we reverse the Board's action.

■ Initiative # 38 seeks to amend article X, section 20, of the Colorado Constitution by adding a new paragraph (d) to subsection (8).[2] We have recently found an earlier version of this initiative to contain multiple subjects in violation of article 5, section 1(5.5), of the Colorado Constitution. *See In re Proposed Initiative for 1997–98 No. 30*, 959 P.2d 822, 826–27 (Colo.1998). This case is directly controlling here. Applying this precedent, we find that Initiative # 38 contains at least two subjects: it creates a tax cut and it imposes new criteria for voter approval of tax, spending, and debt increases. Thus, we hold that Initiative # 38 is unconstitutional because it contains multiple subjects.

■ Here, the Board should have applied our case law to find that Initiative # 38 contained multiple subjects. *See* § 1–40–106.5(3), 1 C.R.S. (1998). Under such circumstances, the Board should not have fixed a title. *See In re Proposed Initiative for 1999–2000 No. 25*, 1999 WL 86675, at *13, 974 P.2d 458, ——; *In re Proposed Initiative for 1997–98 No. 30*, 959 P.2d at 828.

■ Putting aside the issue of multiple subjects, we turn to Petitioner's contention that the titles and summary fail to clearly express the meaning of the initiative. We agree. In fixing titles and summary, the Board's duty is "to capture, in short form, the proposal in plain, understandable, accurate language enabling informed voter choice." *In re Proposed Initiative for 1999–2000 No. 29*, 972 P.2d 257, 266 (Colo.1999). Here, perhaps because the original text of the proposed initiative is difficult to comprehend, the titles and summary are not clear. Therefore, we hold that the titles and summary may not be presented to the voters as currently written. *Cf. In re Proposed Initiative for 1999–2000 No. 25*, 974 P.2d 458, 468–469.

Thus, we remand this matter to the Board with directions to strike the titles and summary and to return Initiative # 38 to its proponent.

## APPENDIX

PROPOSED INITIATIVE 1999–2000 # 38

Initiative # 38 seeks to amend article X, section 20 of the Colorado Constitution by adding the following paragraph:

(8)(d) **Tax cuts.** A $25 tax cut, increased $25 yearly (to $50, $75 ... ), shall lower each tax bill for each 2001 and later district: utility customer tax and franchise charge; vehicle ownership tax; yearly income tax; property tax spent on human and health services, economic development, retirement benefits, enterprises, authorities, courts, jails, libraries, schools, elections, and district attorney, assessor, financial, and legal offices combined; income or property tax equal to the combined yearly cost of lease-purchases, unbonded obligations not paid or fully offset by a pledged cash reserve in the year created, tax-increment financing, tax and spending and debt increases voter-approved after 2000 lasting more than 10 years after approval or above a fixed tax rate and a fixed maximum number of dollars yearly, excess revenue for more than one year per election, and tax credits and rebates unless voter-approved, for overpayment, or for general refunds of excess or illegal revenue; income or property tax equal to yearly revenue from tax and spending and debt increases voter-approved after 2001 except by initiatives adapting all state petition requirements and approved by a voting majority equal to 20% or more of active registered electors; income or property tax equal to prior year revenue above 99% of its spending limits; income or property tax equal to yearly revenue from a tax rate increased or a spending limit percentage, computed since 1992, exceeded from 1993 through 2000, except by a fixed tax rate and a voter-approved fixed maximum num-

**2.** Article X, section 20 of the Colorado Constitution is entitled "The Taxpayer Bill of Rights" and is commonly known as Amendment 1.

ber of dollars yearly; income or property tax equal to yearly revenue of each authority wholly or partly created by or related to the district but outside fiscal year spending limits, computed since 1992, and yearly cost of all state and local tax and business charge exemptions related to each authority and enterprise; and remaining business personal property tax. The state shall replace affected legal local revenue when state fiscal year revenue from all sources increases $200 million or more above that year's replacement increase, shall audit yearly all state and local tax and spending limits, and may limit future actions that increase replacement costs; (8)(d) does not impair those binding contracts or debts existing in 2000, and shall be strictly construed—substantial compliance is insufficient—and not balanced or harmonized with existing law; any person may sue in the supreme court to enforce (8)(d), which suit shall be orally argued and decided within 90 days of filing; and all attorney fees and costs to enforce (8)(d) *shall always* be paid to successful plaintiffs only.

(Emphasis in original.)

The title as designated and fixed by the Board is as follows:

AN AMENDMENT TO THE COLORADO CONSTITUTION ESTABLISHING A $25 TAX CUT TO LOWER EACH 2001 STATE AND LOCAL TAX BILL FOR EACH UTILITY CUSTOMER TAX AND FRANCHISE CHARGE, VEHICLE OWNERSHIP TAX, AND SPECIFIED INCOME TAX AND PROPERTY TAX, AND, IN CONNECTION THEREWITH, INCREASING THE TAX CUT $25 YEARLY THEREAFTER; REQUIRING STATE REPLACEMENT OF AFFECTED LEGAL LOCAL REVENUE WHEN YEARLY STATE REVENUE INCREASES $200 MILLION OR MORE ABOVE THAT YEAR'S REPLACEMENT INCREASE; REQUIRING YEARLY STATE AUDITS OF TAX AND SPENDING LIMITS; ALLOWING THE STATE TO LIMIT FUTURE ACTIONS THAT INCREASE REPLACEMENT COSTS; STATING THAT THIS AMENDMENT DOES NOT IMPAIR BINDING CONTRACTS OR DEBTS EX-ISTING IN 2000; SPECIFYING RULES FOR CONSTRUING THIS AMENDMENT; AND PAYING MANDATORY ATTORNEY FEES AND COSTS TO SUCCESSFUL PLAINTIFFS ONLY.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION ESTABLISHING A $25 TAX CUT TO LOWER EACH 2001 STATE AND LOCAL TAX BILL FOR EACH UTILITY CUSTOMER TAX AND FRANCHISE CHARGE, VEHICLE OWNERSHIP TAX, AND SPECIFIED INCOME TAX AND PROPERTY TAX, AND, IN CONNECTION THEREWITH, INCREASING THE TAX CUT $25 YEARLY THEREAFTER; REQUIRING STATE REPLACEMENT OF AFFECTED LEGAL LOCAL REVENUE WHEN YEARLY STATE REVENUE INCREASES $200 MILLION OR MORE ABOVE THAT YEAR'S REPLACEMENT INCREASE; REQUIRING YEARLY STATE AUDITS OF TAX AND SPENDING LIMITS; ALLOWING THE STATE TO LIMIT FUTURE ACTIONS THAT INCREASE REPLACEMENT COSTS; STATING THAT THIS AMENDMENT DOES NOT IMPAIR BINDING CONTRACTS OR DEBTS EXISTING IN 2000; SPECIFYING RULES FOR CONSTRUING THIS AMENDMENT; AND PAYING MANDATORY ATTORNEY FEES AND COSTS TO SUCCESSFUL PLAINTIFFS ONLY?

The summary prepared by the Board is as follows:

This measure amends article X, section 20 of the Colorado Constitution, by adding a new paragraph (d) to subsection (8). A $25 tax cut, increased $25 each year thereafter, would lower each state and local tax bill for each utility customer tax and franchise charge; vehicle ownership tax; yearly income tax; property tax spent on human and health services, economic development, retirement benefits, enterprises, authorities, courts, jails, libraries, schools, elections, and district attorney, assessor, financial, and legal offices combined; income or property tax

equal to the combined yearly cost of lease-purchases, unbonded obligations not paid or fully offset by a pledged cash reserve in the year created, tax-increment financing, tax and spending and debt increases approved by voters after 2000 that last more than 10 years after approval or above a fixed tax rate and a fixed maximum number of dollars yearly, excess revenue for more than one year per election, and tax credits and rebates unless voter-approved, for overpayment, or for general refunds of excess or illegal revenue; income or property tax equal to yearly revenue from tax and spending and debt increases approved by voters after 2001, except by initiatives adapting all state petition requirements and approved by a voting majority equal to at least twenty percent of active registered electors; income or property tax equal to the prior year's revenue above ninety-nine percent of its spending limits; income or property tax equal to yearly revenue from a tax rate increased or a spending limit percentage, computed since 1992, exceeded from 1993 through 2000, except by a fixed tax rate and a voter-approved fixed maximum number of dollars yearly; income or property tax equal to the yearly revenue of each authority wholly or partly created by or related to the district but outside fiscal year spending limits, computed since 1992, and the yearly cost of all state and local tax and business charge exemptions related to each authority and enterprise; and remaining business personal property tax. The initial tax cut of $25 is applied to tax bills for tax year 2001.

The state is required to replace the legal local government revenue affected by the tax cuts established by this measure when the state's fiscal year revenue from all sources increases $200 million or more above that year's replacement increase. The state is required to audit yearly each tax and spending limit and is authorized to limit future actions that would increase the state's cost to replace local revenues. The measure specifies that it does not impair binding contracts or debts existing in 2000. The measure provides that it is to be strictly construed and not balanced or harmonized with existing provisions. Substantial compliance with the measure is not sufficient. Persons are au-

thorized to enforce this measure by filing suit in the state supreme court, and the measure requires the court to hear oral arguments and decide the case within ninety days of filing. All attorney fees and costs are always awarded to successful plaintiffs only who seek to enforce this new measure.

*State impacts.* The state income tax cut would reduce the growth in state general fund revenue by $256,396,000 during the three-year period beginning with fiscal year 2001–02. The cut in the state utility customer tax and other income tax cuts contained in the measure would reduce the growth in state general fund revenue by an indeterminate amount during the same three-year period.

The state would incur costs of at least $1,100,000 to administer the tax cuts allowed by this measure. In addition, the state may incur costs for possible annual audits, but the amount of these additional costs is indeterminate.

Assuming the state's revenue growth is sufficient to require state replacement of local government revenue losses resulting from the measure, the measure would have a significant but indeterminate negative fiscal impact on the state. Assuming no state replacement of local revenue, the measure would have a net negative state fiscal impact of at least $257,496,000 during the three-year period beginning with fiscal year 2001–02. The figure does not include the amount of negative fiscal impact that will occur but is indeterminate at this time.

*Local impacts.* If the state's revenue growth is not sufficient to require state replacement of legal local government revenue lost due to the measure, the measure would have a significant negative fiscal impact on local governments. Even if the state replaces lost legal local government revenues, the measure may have a negative fiscal impact on some local governments. This measure may increase local government costs due to possible accounting and audit costs, attorney fees and costs that must be mandatorily awarded, and possible increased litigation. The amount of these additional local costs is indeterminate.

December 16, 1998

Hearing adjourned 3:30 p.m.

Rehearing, January 6, 1999

John S. Outcelt Motion granted in part and denied in part.

**In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR 1999–2000 # 40,**

**John S. Outcelt, Petitioner,**

v.

**Douglas Bruce and Jeffrey Wright, Respondents,**

**No. 99SA32.**

Supreme Court of Colorado, En Banc.

March 22, 1999.

Susan E. Burch, Denver, Colorado, Attorney for Petitioner.

Douglas Bruce, Pro Se, Colorado Springs, Colorado.

1. The text of Initiative # 40 and the titles and summary designated and fixed by the Board are

No appearance by or on behalf of Respondent Jeffrey Wright.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, Christine M. Arguello, Deputy Attorney General, Maurice G. Knaizer, Deputy Attorney General, State Services Section, Denver, Colorado Attorneys for Title, Board.

PER CURIAM

Petitioner, John S. Outcelt, brought this original proceeding under section 1–40–107(2), 1 C.R.S. (1998). Petitioner seeks review of the Title Board's action in fixing the title, ballot title and submission clause, and summary ("titles and summary") for a proposed ballot initiative designated "1999–2000 # 40" (Initiative # 40).[1] Petitioner argues: (1) that this proposed initiative violates the constitutional single-subject requirement because it contains more than one subject, including subjects already found by this court to constitute impermissible multiple subjects; (2) that this proposed initiative fails to conform to section 20(3)(c) of article X of the Colorado Constitution; and (3) that the titles and summary fail to clearly express the meaning of the initiative.

Initiative # 40 is virtually identical to Initiative # 38, which we reviewed in *In re Proposed Initiative No. 38,* 977 P.2d 849 (Colo.1999). In fact, the only difference between Initiative # 40 and Initiative # 38 is the amount of the annual tax cut. Therefore, for the reasons stated in *In re Proposed Initiative No. 38,* we remand this matter to the Board with directions to strike the titles and summary and to return Initiative # 40 to its proponent.

**APPENDIX**

PROPOSED INITIATIVE 1999–2000 # 40

Initiative # 40 seeks to amend article X, section 20 of the Colorado Constitution by adding the following paragraph: