In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR 1999–2000 # 44,

John S. Outcelt, Petitioner,

v.

Victoria Buckley, Rebecca Lennahan, and

Michael Mclachlan, Title Board,

and

Douglas Bruce and Jeffrey Wright, Respondents.

No. 99SA53.

Supreme Court of Colorado, En Banc.

April 19, 1999.

subject requirement because it contains more than one subject, including subjects already found by this court to constitute impermissible multiple subjects; (2) that this proposed initiative fails to conform to section 20(3)(c) of Article X of the Colorado Constitution; and (3) that the titles and summary fail to clearly express the meaning of the initiative. We agree with petitioner's first and third contentions. In light of our recent precedent addressing these very issues, we reverse the Board's action.

Susan E. Burch, Denver, Attorney for Petitioner.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, Paul Farley, Deputy Attorney General, Maurice G. Knaizer, Deputy Attorney General State Services Section, Denver, Attorneys for Title Board.

Douglas Bruce, Pro Se

No Appearance by or on behalf of Jeffrey Wright.

## PER CURIAM

In accordance with section 1–40–107(2), 1 C.R.S. (1998), petitioner John S. Outcelt brought this original proceeding to review an action of the Title Board. Petitioner challenges the Title Board's action in fixing the title, ballot title and submission clause, and summary ("titles and summary") for a proposed ballot initiative designated "1999–2000 # 44" (Initiative # 44).[1] Neither the Title Board nor the respondent filed any pleadings in opposition to petitioner's arguments before us.

Petitioner argues: (1) that this proposed initiative violates the constitutional single-

Initiative # 44 seeks to amend Article X, section 20, of the Colorado Constitution[2] by adding a new paragraph (d) to subsection (8). We recently reviewed several earlier versions of similar initiatives and found those initiatives to contain multiple subjects in violation of article 5, section 1(5.5), of the Colorado Constitution. *See In re Proposed Initiative for 1997–98 No. 84,* 961 P.2d 456, 460–61 (Colo.1998); *In re Proposed Initiative for 1997–98 No. 30,* 959 P.2d 822, 826–27 (Colo. 1998); *see also In re Proposed Initiative for 1999–2000 No. 38,* 977 P.2d 849, 850 (Colo. 1999); *In re Proposed Initiative for 1999–2000 No. 28,* 974 P.2d 475, 476 (Colo.1999). Those cases are directly controlling here. Applying this recent precedent, we find that Initiative # 44 contains at least two subjects: it creates a tax cut and, in addition, it imposes new criteria for voter approval of tax, spending, and debt increases. Thus, we hold that Initiative # 44 is unconstitutional because it contains multiple subjects.

In addition to the issue of multiple subjects, we address in turn petitioner's contention that the titles and summary fail to clearly express the meaning of the initiative. We agree. In fixing a title and a summary, the Board's duty is " 'to capture, in short form, the proposal in plain, understandable, accurate language enabling informed voter choice....' " *In re Proposed Initiative for 1999–2000 No. 29,* 972 P.2d 257, 266 (Colo. 1999) (quoting *In re Ballot Title "1997–1998 # 62",* 961 P.2d 1077, 1083 (Colo.1998)).

---

1. The titles and summary designated and fixed by the Board and the text of Initiative # 44 are attached hereto as an appendix.

2. Article X, section 20 of the Colorado Constitution is entitled "The Taxpayer's Bill of Rights" and is commonly known as Amendment 1.

Here, perhaps because the original text of the proposed initiative is difficult to comprehend, the titles and summary are not clear. If the Board "cannot comprehend the initiatives well enough to state their single subject in the titles ... the initiatives cannot be forwarded to the voters and must, instead, be returned to the proponent." *In re Proposed Initiative for 1999–2000 No. 25*, 974 P.2d 458, 469 (Colo.1999). Therefore, we hold that the titles and summary shall not be presented to the voters as currently written.

Here, the Board failed to apply our case law in which we found similar initiatives to violate our state constitution.[3] *See In re Proposed Initiative for 1997–98 No. 30*, 959 P.2d at 822. Applying that case law, the Title Board should have found that Initiative # 44 contained multiple subjects. *See* § 1–40–106.5(3), 1 C.R.S. (1998). Under such circumstances, the Board should not have fixed a title. *See* § 1–40–106, 1 C.R.S. (1998); *In re Proposed Initiative for 1999–2000 No. 25*, 974 P.2d at 469; *In re Proposed Initiative for 1997–98 No. 30*, 959 P.2d at 828.

Accordingly, we reverse the Board's action and remand this matter to the Board with directions to strike the titles and summary and to return Initiative # 44 to its proponent.

## APPENDIX

Title and Summary:

The title as designated and fixed by the Board is as follows:

AN AMENDMENT TO THE COLORADO CONSTITUTION ESTABLISHING A $25 TAX CUT TO LOWER EACH 2001 STATE AND LOCAL TAX BILL FOR EACH UTILITY CUSTOMER TAX AND FRANCHISE CHARGE, VEHICLE OWNERSHIP TAX, AND SPECIFIED INCOME TAX AND PROPERTY TAX, AND,

IN CONNECTION THEREWITH, INCREASING THE TAX CUT $25 YEARLY THEREAFTER; REQUIRING STATE REPLACEMENT OF LOCAL REVENUE WHEN YEARLY STATE REVENUE INCREASES $200 MILLION OR MORE ABOVE THAT YEAR'S REPLACEMENT INCREASE; REQUIRING YEARLY STATE AUDITS OF TAX, SPENDING, AND DEBT LIMITS; ALLOWING THE STATE TO LIMIT FUTURE LOCAL ACTIONS THAT INCREASE REPLACEMENT COSTS; STATING THAT THIS AMENDMENT DOES NOT IMPAIR BINDING CONTRACTS OR DEBTS EXISTING IN 2000; SPECIFYING RULES FOR CONSTRUING THIS AMENDMENT; AND PAYING MANDATORY ATTORNEY FEES AND COSTS TO SUCCESSFUL PLAINTIFFS ONLY.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION ESTABLISHING A $25 TAX CUT TO LOWER EACH 2001 STATE AND LOCAL TAX BILL FOR EACH UTILITY CUSTOMER TAX AND FRANCHISE CHARGE, VEHICLE OWNERSHIP TAX, AND SPECIFIED INCOME TAX AND PROPERTY TAX, AND, IN CONNECTION THEREWITH, INCREASING THE TAX CUT $25 YEARLY THEREAFTER; REQUIRING STATE REPLACEMENT OF LOCAL REVENUE WHEN YEARLY STATE REVENUE INCREASES $200 MILLION OR MORE ABOVE THAT YEAR'S REPLACEMENT INCREASE; REQUIRING YEARLY STATE AUDITS OF TAX, SPENDING, AND DEBT LIMITS; ALLOWING THE STATE TO LIMIT

---

**3.** Comparing Initiative # 44 to the initiative reviewed in *In re Proposed Initiative 1999–2000 No. 38*, No. 99SA12, 977 P.2d 849 (Colo. Mar.22, 1999), we find little change in form and none that are material here. We briefly note that proponents rearranged the order of taxes affected by the proposed tax cuts and grammatically edited portions of the first and second sentences. Among a few other changes, proponents also altered the percentage of active registered electors from "20% or more" to "a majority below 20%" necessary for tax, spending and debt increases. In addition, other changes in form include altering the spending limit computation from "exceeded from 1993 through 2000" to "exceeded after 1992 but before 2001." The proponents modified "remaining business personal property tax" to read "business personal property tax," and added another affected tax, "income on property tax equal to accrued revenue and interest from damage awards after 1997 not for injury to district tangible property nor for theft."

FUTURE LOCAL ACTIONS THAT IN-CREASE REPLACEMENT COSTS; STATING THAT THIS AMENDMENT DOES NOT IMPAIR BINDING CON-TRACTS OR DEBTS EXISTING IN 2000; SPECIFYING RULES FOR CONSTRU-ING THIS AMENDMENT; AND PAYING MANDATORY ATTORNEY FEES AND COSTS TO SUCCESSFUL PLAINTIFFS ONLY?

The summary prepared by the Board is as follows:

This measure amends article X, section 20 of the Colorado Constitution, by adding a new paragraph (d) to subsection (8). A $25 tax cut, increased $25 each year thereafter, would lower each state and local tax bill for each utility customer tax and franchise charge; vehicle ownership tax; yearly in-come tax; property tax spent on economic development, human and health services, re-tirement benefits, enterprises, authorities, li-braries, elections, courts, jails, schools, and district attorney, assessor, financial, and le-gal offices combined; income or property tax equal to the yearly costs of lease-purchases, tax-increment financing, non-debt obligations not paid in the year created nor offset by constitutionally-required reserves, all state and local tax exemptions related to each en-terprise and authority, and tax credits and rebates not voter-approved nor for overpay-ment or general refunds of excess or illegal revenue; income or property tax equal to yearly revenue from excess revenue for more than one year per election and from tax and spending and debt increases approved by voters after 2000 that last more than 10 years after approval, above a fixed tax rate and a fixed maximum number of dollars yearly, or approved by a majority below twenty percent of active registered electors; income or property tax equal to yearly reve-nue above ninety-nine percent of its spending limits not voter-approved after 1992; income or property tax equal to yearly revenue from tax rates and spending limit percentages ex-ceeded after 1992 but before 2001, except by a voter-approved fixed tax rate and fixed maximum number of dollars yearly; income or property tax equal to the yearly revenue of authorities wholly or partly created by or related to that district but not covered by tax

and spending and debt limits, computed since 1992; income or property tax equal to ac-crued revenue and interest from damage awards after 1997 not for injury to district tangible property nor for theft; and business personal property tax. The initial tax cut of $25 is applied to tax bills for tax year 2001.

The state is required to replace the local government revenue affected by the tax cuts established by this measure when state fiscal year revenue from all sources increases $200 million or more above that year's replace-ment increase. The state is required to audit yearly each tax, spending, and debt limit and is authorized to limit future local actions that would increase the state's cost to replace local revenues. The measure specifies that it does not impair binding contracts or debts existing in 2000. The measure provides that it is to be strictly construed and not balanced or harmonized with existing provisions. Sub-stantial compliance with the measure is not sufficient. Anyone is authorized to enforce this measure by filing suit in the state su-preme court and the measure requires the court to hear oral arguments and decide the case within ninety days of filing. All attor-ney fees and costs are always paid to suc-cessful plaintiffs only who seek to enforce this new measure.

*State impacts.* The state income tax cut would reduce the growth in state general fund revenue by $258,160,600 during the three-year period beginning with fiscal year 2001–02. The cut in the state utility custom-er tax and other income tax cuts contained in the measure would reduce the growth in state general fund revenue by an indetermi-nate amount during the same three-year pe-riod.

The state would incur costs of at least $1,100,000 to administer the tax cuts allowed by this measure. In addition, the state may incur costs for possible annual audits, but the amount of these additional costs is indetermi-nate.

Assuming the state's revenue growth is sufficient to require state replacement of lo-cal government revenue losses resulting from the measure, the measure would have a sig-nificant but indeterminate negative fiscal im-pact on the state. Assuming no state re-

placement of local revenue, the measure would have a net negative state fiscal impact of at least $259,260,600 during the three-year period beginning with fiscal year 2001–02. The figure does not include the amount of negative fiscal impact that will occur but is indeterminate at this time.

*Local impacts.* If the state's revenue growth is not sufficient to require state replacement of legal local government revenue lost due to the measure, the measure would have a significant negative fiscal impact on local governments. Even if the state replaces lost legal local government revenues, the measure may have a negative fiscal impact on some local governments. This measure may increase local government costs due to possible accounting and audit costs, attorney fees and costs that must be mandatorily awarded, and possible increased litigation. The amount of these additional local costs is indeterminate.

Title Set on January 20, 1999

Hearing adjourned at 2:47 p.m.

Rehearing Denied

Rehearing adjourned at 2:10 p.m.

INITIATIVE NUMBER "1999–2000 # 44":

Be it Enacted by the People of the State of Colorado:

Article X, section 20. The Taxpayer's Bill of Rights, is amended to add:

(8)(d) **Tax cuts.** A $25 tax cut, increased $25 yearly (to $50, $75 ... ), shall lower each tax bill for each 2001 and later district: utility customer tax and franchise charge; vehicle ownership tax; yearly income tax; property tax spent on economic development, human and health services, retirement benefits, enterprises, authorities, libraries, elections, courts, jails, schools, and district attorney, assessor, financial, and legal offices combined; income or property tax equal to yearly costs of lease-purchases, tax-increment financing, non-debt obligations not paid in the year created nor offset by (4)(b) reserves, all state and local tax exemptions related to each enterprise and authority, and tax credits and rebates not voter-approved nor for overpayment or general refunds of illegal or excess revenue; income or property tax equal to yearly revenue from excess revenue for more than one year per election and from tax and spending and debt increases voter-approved after 2000 lasting beyond 10 years after approval, above a fixed tax rate and fixed maximum number of dollars yearly, or approved by a majority below 20% of active registered electors; income or property tax equal to yearly revenue above 99% of its spending limits not voted-approved after 1992; income or property tax equal to yearly revenue from tax rates and spending limit percentages exceeded after 1992 but before 2001 except by a voter-approved fixed tax rate and fixed maximum number of dollars yearly; income or property tax equal to yearly revenue of authorities wholly or partly created by or related to that district but not covered by tax and spending and (4)(b) limits, computed since 1992; income or property tax equal to accrued revenue and interest from damage awards after 1997 not for injury to district tangible property nor for theft; and business personal property tax. The state shall replace local revenue when state fiscal year revenue from all sources increases $200 million or more above that year's replacement increase, shall audit yearly all state and local tax and spending and (4)(b) limits for strict compliance, and may limit future local actions increasing replacement costs; (8)(d) impairs no binding contract or debt existing in 2000, and shall be strictly construed—substantial compliance is insufficient—and not balanced or harmonized with existing law; anyone may sue in the supreme court to enforce (8)(d), which suit shall be orally argued and decided within 90 days of filing; and all attorney fees and costs to enforce (8)(d) *shall always* be paid to successful plaintiffs only.

Douglas Bruce

Box 26018

Colo. Spgs. CO 80936

(719)550–0010

Jeffrey Wright

Box 251

Peyton CO 80831

(719)749–9984