2014 CO 66

**In the MATTER OF the TITLE, BALLOT TITLE, AND SUBMISSION CLAUSE FOR 2013–2014 #89**

Douglas Kemper, Mizraim S. Cordero, and Scott Prestidge, Petitioners

v.

Caitlin Leahy and Gregory Diamond, Respondents

and

Suzanne Staiert, Daniel Domenico, and Jason Gelender, Title Board.

Supreme Court Case No. 14SA126

Supreme Court of Colorado.

June 30, 2014

Attorneys for Petitioner Douglas Kemper: Burns, Figa & Will, P.C., Stephen H. Leonhardt, Alix L. Joseph, Wenzel J. Cummings, Greenwood Village, Colorado

Attorneys for Petitioners Mizraim S. Cordero and Scott Prestidge: Ryley Carlock & Applewhite, Richard C. Kaufman, Julie A. Rosen, Sarah K. Pallotti, Denver, Colorado

Attorneys for Respondents Caitlin Leahy and Gregory Diamond: Heizer Paul LLP, Martha M. Tierney, Edward T. Ramey, Denver, Colorado

Attorneys for Ballot Title Board: John W. Suthers, Attorney General, Sueanna P. Johnson, Assistant Attorney General, Denver, Colorado

JUSTICE BOATRIGHT delivered the Opinion of the Court.

¶ 1 In this original proceeding under section 1–40–107(2), C.R.S. (2013), we review the Ballot Title Setting Board's ("Title Board") findings that proposed initiative 2013–2014 # 89 ("Initiative # 89"), its title, and its ballot title and submission clause (collectively, the "Titles") contain a single subject and that the Titles are clear.[1] We hold that Initiative

---

**1.** Petitioner Douglas Kemper presented the following two issues for our review:

 1. Whether the Ballot Title Setting Board (the "Board") incorrectly determined that Initiative 2013–2014 # 89 ("Initiative # 89") is limited to a single subject, in light of the multiple objectives of this measure, to:
 a. Create a fundamental right to conservation of Colorado's environment;

 b. Adopt a form of public trust doctrine by declaring common property in Colorado's environment; and
 c. Establish local control to enforce environmental regulations more restrictive than state law.
 2. Whether the Board's title, ballot title, and submission clause (collectively, the "Titles") for Initiative # 89 are unfair in that the phrase "concerning a public right to Colora-

# 89 and its Titles state a single subject and that the Titles satisfy the clear title requirement.[2] We therefore affirm the action of the Title Board.

## I. Facts and Procedural History

¶ 2 Respondents Caitlin Leahy and Gregory Diamond proposed Initiative # 89 to create a public right to Colorado's environment by adding new section 32 to article II of the state constitution. Specifically, proposed subsection (1) states that Colorado's environment, meaning "clean air, pure water, and natural and scenic values," is the "common property of all Coloradans." Proposed subsection (2) makes state and local governments trustees of the environment and requires that they conserve the state's environment. Finally, proposed subsection (3) authorizes local governments to enact "laws, regulations, ordinances, and charter provisions that are more restrictive and protective of the environment" than the laws enacted by the state. This proposed subsection also states that if a local law conflicts with state law, the more restrictive and protective law governs.

¶ 3 The Proponents submitted a final version of Initiative # 89 to the Secretary of State on March 21, 2014. The Title Board conducted a hearing for the initiative. The Title Board concluded that the initiative contained a single subject as required by article V, section 1(5.5) of the Colorado Constitution and section 1–40–106.5, C.R.S. (2013). Accordingly, the Title Board set the Titles in accordance with section 1–40–106(1), C.R.S. (2013).

¶ 4 On April 10, 2014, Petitioner Douglas Kemper filed a Motion for Rehearing, arguing that Initiative # 89 violated the single subject requirements of section 1–40–106.5 and of article V, section 1(5.5) of the Colorado Constitution, and violated the clear title requirement of section 1–40–106. Petitioners Mizraim S. Cordero and Scott Prestidge also filed a motion for rehearing on the same day. Cordero and Prestidge made similar arguments to Kemper and also raised other issues with respect to the single subject and clear title requirements.

¶ 5 At the rehearing on April 16, 2014, the Title Board rejected Petitioners' objections and concluded that the measure contained a single subject. The Title Board did, however, modify the Titles. The amended title reads as follows:

An amendment to the Colorado constitution concerning a public right to Colorado's environment, and, in connection therewith, declaring that Colorado's environment is the common property of all Coloradans; specifying that the environment includes clean air, pure water, and natural and scenic values and that state and local govern-

do's environment" does not clearly express either a single subject or the full scope of Initiative # 89, and in that they entirely omit a materially important feature of the fundamental right created by the Initiative.

Petitioners Mizraim S. Cordero and Scott Prestidge presented the following two issues for our review:

1. Whether the Ballot Title Setting Board (the "Board"), in violation of article V, section 1(5.5) of the Colorado Constitution and section 1–40–106.5, C.R.S. (2013), improperly proceeded to set title on Initiative 2013–2014 # 89 ("Initiative # 89"), despite Initiative # 89 containing multiple, distinct, and unrelated purposes, including:
 a. Creation of a "common property" right to the environment, which includes the "clean air, pure water, and natural and scenic values";
 b. Establishment of a public trust over the above enumerated resources and appointment of the state and local governments as trustees of such resources;

 c. Conferment on local governments the power to enact laws, regulations, ordinances, and charter provisions that are more restrictive and protective of the environment laws or regulations enacted by the state; and
 d. Formation of a new preemption doctrine whereby more restrictive local laws shall preempt statutes and regulations enacted by the state government.

2. Whether the title, ballot title, and submission clause (collectively, the "Title") set by the Board on Initiative # 89 is confusing, misleading, and fails to reflect the true intent of the Proponents in violation of section 1–40–106, C.R.S. (2013), where the Title fails to adequately inform voters of the objective of the measure and impermissibly contains a catch phrase.

2. See the Appendix to this decision for the text of Initiative # 89 and the Titles that the Title Board adopted for the ballot.

ments are trustees of this resource; requiring state and local governments to conserve the environment; and declaring that if state or local laws conflict the more restrictive law or regulation governs.[3]

According to the Title Board, the initiative's single subject is the "creation of the public's right to Colorado's environment."

¶ 6 Petitioners now raise several challenges to the Title Board's actions regarding Initiative # 89. Petitioners assert that in setting the Titles, the Title Board violated article V, section 1(5.5) of the Colorado Constitution and section 1–40–106.5, because Initiative # 89 contains multiple subjects. In addition, Petitioners contend that the Titles are misleading.

## II. Analysis

¶ 7 We hold that Initiative # 89 and its Titles contain a single subject—the creation of the public's right to Colorado's environment—and that the Titles are fair, clear, and accurate. To reach this result, we first explain the limited scope of our review. We then discuss Colorado's single subject rule and analyze the plain language of Initiative # 89 to conclude that it contains a single subject. Finally, we describe Colorado's title requirements and determine that the Titles here comport with the requirements.

### A. Standard of Review

¶ 8 When reviewing a challenge to the Title Board's decision, "we employ all legitimate presumptions in favor of the propriety of the [Title] Board's actions." *In re Title, Ballot Title, & Submission Clause for 2009–2010 No. 45*, 234 P.3d 642, 645 (Colo. 2010). As such, we liberally construe the single subject requirement and "only overturn the Title Board's finding that an initiative contains a single subject in a clear case." *In re Title, Ballot Title, & Submission Clause for 2011–2012 No. 3*, 2012 CO 25, ¶ 6, 274 P.3d 562; *In re Title, Ballot Title, Submission Clause, & Summary Adopted March 20, 1996, by the Title Bd. Pertaining to Proposed Initiative 1996–6*, 917 P.2d 1277, 1280 (Colo.

1996). Similarly, when reviewing the Titles for clarity and accuracy, we only reverse the Title Board's decision if the Titles are "insufficient, unfair, or misleading." *In re 2009–2010 No. 45*, 234 P.3d at 648.

¶ 9 In addition to being limited by the deferential standard that we afford the Title Board's decisions, our review is also limited to two narrow inquiries. First, we analyze the plain language of the initiative to determine whether it comports with the requirement that the proposal only contain a single subject. *In re 2011–2012 No. 3*, ¶ 8. Second, we analyze the Titles to determine if they are "fair, clear, accurate, and complete." *Id.* In conducting each of these inquiries, we employ the general rules of statutory construction and give the words and phrases their plain and ordinary meaning. *In re Title, Ballot Title, & Submission Clause for 2007–2008 No. 17*, 172 P.3d 871, 874 (Colo.2007).

¶ 10 Crucially, when reviewing the Title Board's decision, we do *not* consider the merits of the proposed initiative. *In re 2011–2012 No. 3*, ¶ 8. Nor do we review the initiative's "efficacy, construction, or future application," as those issues do not come up unless and until the voters approve the amendment. *In re 2009–2010 No. 45*, 234 P.3d at 645; *In re Title, Ballot Title, Submission Clause, & Summary for 1999–2000 No. 200A*, 992 P.2d 27, 30 (Colo.2000) ("[T]he initiative's efficacy, construction, or future application ... is a matter for judicial determination in a proper case should the voters approve the initiative.").

¶ 11 With this standard in mind, we now review the single subject requirement and then consider whether Initiative # 89 violates it.

### B. Initiative # 89 Does Not Violate the Single Subject Requirement

¶ 12 In accord with article V, section 1(5.5) of the state constitution, section 1–40–106.5(1)(a) requires that "every constitutional amendment or law proposed by initia-

---

**3.** The ballot title and submission clause contains the same language as the title except that it is

phrased in the form of a yes-or-no question.

tive ... be limited to a single subject." Accordingly, a proposed initiative that "relate[s] to more than one subject, and ha[s] at least two distinct and separate purposes not dependent upon or connected with each other," violates this rule. *See People ex rel. Elder v. Sours,* 31 Colo. 369, 403, 74 P. 167, 177 (1903). In other words, a proposed initiative cannot seek to accomplish multiple, discrete, unconnected purposes. *See In re Title, Ballot Title, Submission Clause, & Summary Adopted April 5, 1995, by Title Bd. Pertaining to a Proposed Initiative Pub. Rights in Waters II,* 898 P.2d 1076, 1080 (Colo.1995) (*"Waters II"*) (holding that the initiative violated the single subject requirement where there was "no unifying or common objective between the ... paragraphs"). By contrast, "if the initiative tends to effect or to carry out one general object or purpose, it is a single subject under the law." *Id.* at 1079. An initiative meets this requirement as long as the subject matter of the initiative is "necessarily or properly connected." *In re 1996–6,* 917 P.2d at 1280 (internal quotation marks omitted). Stated differently, "so long as an initiative encompasses *related* matters it does not violate the single subject requirement." *In re Title, Ballot Title, Submission Clause, & Summary with Regard to a Proposed Petition for an Amendment to the Constitution of the State of Colo. Adding Section 2 to Article VII,* 900 P.2d 104, 113 (Colo.1995) (Scott, J., concurring). While the initiative's subject or purpose may be broad, an initiative cannot satisfy the single subject requirement simply by claiming that each proposed change falls under the same general overarching theme. *Compare In re Title, Ballot Title, Submission Clause, & Summary for 1999–2000 No. 256,* 12 P.3d 246, 254 (Colo.2000) (holding that an initiative does not violate the single subject requirement simply because it covers a broad subject), *with Waters II,* 898 P.2d at 1080 (holding that "water" is too general to satisfy the single subject requirement).

¶ 13 The single subject requirement prevents two "dangers" of multi-subject initiatives. *See In re 2011–2012 No. 3,* ¶ 11. First, it prevents the enactment of combined measures that would fail on their individual merits. *Id.* By combining unconnected subjects, proponents may be able to shore up support from groups with different, or even conflicting, interests. *Id.* The single subject requirement, however, prevents such a result by ensuring that each initiative must pass on its own merits. *See id.* Second, the single subject requirement also "protects against fraud and surprise occasioned by the inadvertent passage of a surreptitious provision 'coiled up in the folds' of a complex [initiative]." *In re Title, Ballot Title, & Submission Clause for Proposed Initiative 2001–2002 No. 43,* 46 P.3d 438, 440 (Colo.2002) (quoting *In re Breene,* 14 Colo. 401, 404, 24 P. 3, 4 (1890)).

¶ 14 Turning to Initiative # 89, we determine that it contains a single subject: "the creation of a public right to Colorado's environment." The subject is not an overly broad, overarching category, and each of Initiative # 89's subsections is properly connected to this subject.

¶ 15 Proposed subsection (1) declares that Colorado's environment is the common property of Coloradans; therefore, in unambiguous terms, this subsection states that the purpose of Initiative # 89 is the same as the subject, namely, the creation of a public right to Colorado's environment. Proposed subsections (2) and (3) then provide the mechanism for carrying out the objective of subsection (1). Thus, contrary to Petitioners' arguments, these two subsections are necessarily and properly connected to the subject of creating a public right to Colorado's environment, and therefore, their inclusion does not violate the single subject requirement. *See In re Title, Ballot Title, & Submission Clause for 2009–2010 No. 91,* 235 P.3d 1071, 1076 (Colo.2010) ("An initiative proposing a comprehensive framework contains a single subject if all of its provisions relate directly to its single subject.").

¶ 16 Examining subsection (2) in more detail, it establishes that the state and local governments shall serve as trustees of the public's right to Colorado's environment. We disagree with Petitioners' argument that the establishment of a public trust in the environment is not necessarily connected to the creation of the public's right in the state's

environmental resources. This subsection is properly connected to the subject of the public's right to the environment because it describes a part of the legal framework necessary to create and protect a public right in the environment. *See In re 1999–2000 No. 200A*, 992 P.2d at 30 ("Implementation details that are directly tied to the initiative's central focus do not constitute a separate subject." (internal quotation marks omitted)).[4]

¶ 17 Similarly, proposed subsection (3) also provides a mechanism for achieving Initiative # 89's objective because it seeks to facilitate the government's ability to serve as trustee. Specifically, the subsection states that if local governments enact "laws, regulations, ordinances, and charter provisions that are more restrictive and protective of the environment" than the laws enacted by the state, the more restrictive and protective laws will control. The inclusion of such a provision in the proposal is properly connected to the local government's role as trustee. Further, we need not address Petitioner Kemper's argument that this section may "fundamentally chang[e]" the state's preemption law. Not only is the effect of an initiative outside of the scope of our review, *In re 1999–2000 No. 256*, 12 P.3d at 257, but the mere fact that an initiative may create a change does not mean that it violates the single subject requirement, *see id.* at 254 (holding that the proposal does not necessarily violate the single subject requirement just because it "makes policy choices that are not inevitably interconnected").

¶ 18 We also find that Initiative # 89 does not present either of the two dangers that the single subject requirement attempts to prevent. First, Initiative # 89 does not seek to garner support from various factions by combining unrelated subjects in a single proposal. In the past, when we have found that an initiative is attempting to collect enough votes to pass by combining multiple subjects

in a single proposal, there has been no clear connection between the various sections of the proposal. For example, we found that a proposal was trying to accomplish two separate, unrelated purposes when it sought to simultaneously establish water district election protocols and enact a public trust doctrine in Colorado. *Waters II*, 898 P.2d at 1080. Here, however, Initiative # 89 seeks to create a public right in the state's natural resources and provides two mechanisms for establishing and enforcing the right. Because the subsections are all related to the accomplishment of a single purpose, the proposal will pass or fail on its own merits and does not run the risk of garnering support from factions with different or conflicting goals.

¶ 19 The second danger—that voters may be surprised by effects that are hidden in the body of an initiative that is misleading or overly complex—is also absent here. This danger exists where an initiative, although claiming to have a single subject, in reality has multiple purposes, and as a result, voters would not expect that passing the initiative would lead to one or more of the initiative's outcomes. *See In re 2011–2012 No. 3*, ¶ 19. For example, we held that an initiative that claimed to provide a tax break presented a danger of surprise because it hid the fact that the initiative would also result in mandatory state spending reductions. *See In re Title, Ballot Title, Submission Clause, & Summary for 1997–1998 No. 30*, 959 P.2d 822, 827 (Colo.1998). Here, however, there is no serious risk that the voters will be unaware of the primary effects of Initiative # 89 because each of the sections relates to the same subject, the plain language of Initiative # 89 creates a public right and then lays out the procedures for implementing and enforcing that right, and the proposal is not particularly lengthy or complex. *See In re Title, Ballot Title, & Submission Clause for 2011–2012 No. 45*, 2012 CO 26, ¶ 20, 274 P.3d

---

4. We do not need to address Petitioners' arguments that the creation of a public trust would have negative effects on Colorado's prior appropriation water rights regime because such an inquiry is beyond the scope of the single subject inquiry presently before us. *See In re Title, Ballot Title, & Submission Clause for 2007–2008 No.*

62, 184 P.3d 52, 58 (Colo.2008) ("[W]hen determining whether a proposed initiative comports with the single-subject/clear title requirement, we may not address the merits of a proposed initiative, nor may we interpret its language or predict its application if adopted by the electorate." (alteration and internal quotation marks omitted)).

576 (holding that the initiative would not lead to voter surprise where the plain language of the proposal explained the initiative's effects); *cf. In re Title, Ballot Title, Submission Clause, & Summary for 1997–1998 No. 84*, 961 P.2d 456, 461 (Colo.1998) (holding that an initiative violated the single subject requirement when it included "hidden" subjects).

¶ 20 We therefore reject Petitioners' arguments that Initiative # 89 covers multiple subjects.

## C. The Titles Are Not Misleading

¶ 21 Petitioners also assert that Initiative # 89's Titles are deficient for three reasons. Petitioners first claim that the Titles are misleading because they provide an inaccurate or vague description of the subject. Petitioners' second argument is that the Titles are deficient because they omit or do not adequately explain material provisions. Finally, Petitioners allege that the Titles inappropriately make use of a catch phrase. We disagree, and instead conclude that the Titles comport with the requirements set forth in section 1–40–106.

¶ 22 Section 1–40–106(3)(b) provides the requirements for an initiative title. It states that the Title Board "shall consider the public confusion that might be caused by misleading titles and shall, whenever practicable, avoid titles for which the general understanding of the effect of a 'yes/for' or 'no/against' vote will be unclear." § 1–40–106(3)(b). Furthermore, it requires that the title be brief, "express the true intent and meaning" of the initiative, and "unambiguously state the principle of the provision sought to be added, amended, or repealed." *Id.*

¶ 23 We have interpreted this statute to impose on the Title Board the job of "set[ting] fair, clear, and accurate titles that do not mislead the voters through a material omission or misrepresentation." *In re 1999–2000 No. 256*, 12 P.3d at 256. This requirement, however, does not mean that the Titles need to contain every detail of the proposal. *Id.* The Titles also are not required to explain every possible effect of enacting the initiative. *In re Title, Ballot*

*Title, & Submission Clause for 2007–2008 No. 61*, 184 P.3d 747, 752 (Colo.2008). Furthermore, as noted above, the Title Board has broad discretion in drafting the Titles, and as a result, when we review the Titles, we grant great deference to the Title Board's decisions. *In re 1999–2000 No. 256*, 12 P.3d at 255. As such, we only reverse the Titles where the language is "clearly misleading." *Id.*

¶ 24 First, contrary to Petitioners' argument, we find that the Titles are not misleading or overly vague. The Titles must clearly express the single subject of the initiative. *In re 2009–2010 No. 45*, 234 P.3d at 647. Here, the phrase, "concerning a public right to Colorado's environment" is a clear expression of the initiative's purpose because it alerts voters to the fact that the initiative is related to the public's right to the environment. Furthermore, the fact that the Titles do not discuss all of the potential impacts of the initiative is not improper, as the Title Board may not speculate on the potential effects of the initiative if enacted. *In re Proposed Initiated Constitutional Amendment Concerning the Fair Treatment of Injured Workers Amendment*, 873 P.2d 718, 720–21 (Colo.1994).

¶ 25 Relatedly, we also disagree with Petitioners' claim that the Titles omit key terms. The Titles need not contain every feature of the proposed measure. *In re Title, Ballot Title, Submission Clause, & Summary with Regard to a Proposed Petition for an Amendment to the Constitution of the State of Colo. Adding Section 2 to Article VII*, 907 P.2d 586, 592 (Colo.1995). Here, the Titles explain that Initiative # 89 addresses the public's right to the environment, the central purpose of the proposal. The Titles also alert the voter to subsection (2)'s designation of state and local governments as trustees of the public's right, and to subsection (3)'s statement that where state and local laws conflict, the more restrictive law will govern. The fact that the Titles neither include every detail of the initiative nor use the phrase "fundamental right" to describe the public's right to the environment is not problematic, as the Titles alert the voter to the material elements and purpose of the

initiative. *See id.* (holding that it was not necessary to describe in the Titles each change proposed in the initiative).

 ¶ 26 Finally, we reject Petitioners' argument that the Titles make improper use of a catch phrase by defining the environment as "includ[ing] clean air, pure water, and natural and scenic values." A catch phrase consists of "words that work in favor of a proposal without contributing to voter understanding." *In re 2009–2010 No. 45*, 234 P.3d at 649. The purpose of forbidding the use of catch phrases in an initiative is to "guard against inflammatory ... words or phrases that promote prejudice in place of [voter] understanding [of] what is really being proposed"; accordingly, words that "merely describe the proposal are not impermissible catch phrases." *Id.* We evaluate whether the Titles include an impermissible catch phrase by considering the contemporary political debate. *In re Title, Ballot Title, Submission Clause, & Summary for 1999–2000 No. 258(A)*, 4 P.3d 1094, 1100 (Colo.2000). Here, although the environment and conservation are common topics of debate, the words used in the initiative do not constitute a catch phrase because they form a descriptive phrase that contributes to voter understanding of the purpose of the initiative. *Cf. id.* (holding that the phrase "as rapidly and effectively as possible" was an impermissible catch phrase because it "mask[s] the policy question" regarding whether the initiative offers "the most rapid and effective way" to accomplish its goal). Moreover, the phrase is not simply an "appeal to emotion" or an attempt to "distract[ ] voters from consideration of the proposed initiative's merits," the evils that this prohibition seeks to prevent. *In re 2009–2010 No. 45*, 234 P.3d at 649.

¶ 27 Hence, we conclude that the Titles comport with the requirements set forth in section 1–40–106(3)(b).

### III. Conclusion

¶ 28 For the foregoing reasons, we hold that Initiative # 89 and its Titles contain a single subject and that the Titles satisfy the clear title requirement. Therefore, we affirm the decision of the Title Board.

JUSTICE HOBBS dissents, and CHIEF JUSTICE RICE joins in the dissent.

Attachment

**APPENDIX–Initiative # 89 and Titles**

Be it Enacted by the People of the State of Colorado:

SECTION 1. In the constitution of the state of Colorado, amend article II to add the following:

**Section 32. Environmental Rights** (1) THE PEOPLE OF THE STATE OF COLORADO FIND AND DECLARE THAT COLORADO'S ENVIRONMENT IS THE COMMON PROPERTY OF ALL COLORADANS; CONSERVATION OF COLORADO'S ENVIRONMENT, INCLUDING ITS CLEAN AIR, PURE WATER, AND NATURAL AND SCENIC VALUES IS FUNDAMENTAL; AND COLORADO'S ENVIRONMENT SHOULD BE PROTECTED AND PRESERVED FOR ALL COLORADANS, INCLUDING GENERATIONS YET TO COME.

(2) THE PEOPLE OF THE STATE OF COLORADO, INCLUDING FUTURE GENERATIONS, HAVE A RIGHT TO COLORADO'S ENVIRONMENT, INCLUDING ITS CLEAN AIR, PURE WATER, AND NATURAL AND SCENIC VALUES. AS TRUSTEES OF THIS RESOURCE, THE STATE AND LOCAL GOVERNMENTS SHALL CONSERVE COLORADO'S ENVIRONMENT, INCLUDING ITS CLEAN AIR, PURE WATER, AND NATURAL AND SCENIC VALUES FOR THE BENEFIT OF ALL THE PEOPLE. THIS SECTION APPLIES TO THE STATE OF COLORADO AND TO EVERY COLORADO CITY, TOWN, COUNTY, AND CITY AND COUNTY, NOTWITHSTANDING ANY PROVISION OF ARTICLE XX, OR SECTION 16 OF ARTICLE XIV, OF THE COLORADO CONSTITUTION.

(3) ALL PROVISIONS OF THIS SECTION OF ARTICLE II OF THE COLORADO CONSTITUTION ARE SELF–

EXECUTING AND SEVERABLE. TO FACILITATE THE CONSERVATION OF COLORADO'S ENVIRONMENT, LOCAL GOVERNMENTS HAVE THE POWER TO ENACT LAWS, REGULATIONS, ORDINANCES, AND CHARTER PROVISIONS THAT ARE MORE RESTRICTIVE AND PROTECTIVE OF THE ENVIRONMENT THAN LAWS OR REGULATIONS ENACTED OR ADOPTED BY THE STATE GOVERNMENT. IF ANY LOCAL LAW OR REGULATION ENACTED OR ADOPTED PURSUANT TO THIS ARTICLE CONFLICTS WITH A STATE LAW OR REGULATION, THE MORE RESTRICTIVE AND PROTECTIVE LAW OR REGULATION GOVERNS.

### Ballot Title Setting Board

### Proposed Initiative 2013–2014 # 89

The title as designated and fixed by the [Title] Board is as follows:

> An amendment to the Colorado constitution concerning a public right to Colorado's environment, and, in connection therewith, declaring that Colorado's environment is the common property of all Coloradans; specifying that the environment includes clean air, pure water, and natural and scenic values and that state and local governments are trustees of this resource; requiring state and local governments to conserve the environment; and declaring that if state or local laws conflict the more restrictive law or regulation governs.

The ballot title and submission clause as designated and fixed by the [Title] Board is as follows:

> Shall there be an amendment to the Colorado constitution concerning a public right to Colorado's environment, and, in connection therewith, declaring that Colorado's environment is the common property of all Coloradans; specifying that the environment includes clean air, pure water, and natural and scenic values and that state and local governments are trustees of this resource; requiring state and local governments to conserve the environment; and

declaring that if state or local laws conflict the more restrictive law or regulation governs?

JUSTICE HOBBS, dissenting.

¶ 29 I respectfully dissent. I would reverse the Title Board's action setting a title for Initiative # 89. The initiative combines two separate and unrelated subjects under the guise of protecting the "environment." First, it proposes to fundamentally change Colorado property law by creating a new constitutional right in Colorado's Bill of Rights. This "common property" right in the "environment" would override existing private and publicly held property rights. In connection with the creation of this "common property" right, Initiative # 89 would impose a public trust over the environment with corresponding duties on state and local government officials, who would be required to act adversely to the interests of private parties and governmental entities that own property rights not currently held in common. In a separate subject, Initiative # 89 proposes to grant new powers to both home-rule and statutory municipalities enabling them, for the first time, to enact laws that would always preempt state laws. These two subjects—creating a "common property" right in the environment with a public trust enforcement responsibility, and transforming Colorado's preemption doctrines—are separate and distinct purposes that bear no necessary or proper relation to one another.

¶ 30 I would also reverse the Title Board's action setting a title for the initiative because the title is misleading. Voters could favor this amendment out of solicitude for protecting the environment, a value all Coloradans prize, without realizing that the initiative proposes a fundamental transformation of property law in the state and potentially subjects state and local governments to takings liability. Different groups could favor one subject and not the other, but they would be unable to vote on the provisions separately. The title set for the initiative does not pass statutory muster because it fails to make these separate subjects apparent to the voters. Given the wording of the title, voters might reasonably conclude that nothing more is at stake in voting for the measure than

assuring and reinforcing a declaration of regulatory balance between protection of the environment and protection of private and public property rights. In fact, Initiative # 89 would upend the existing regulatory balance and thrust private property owners and governments into an uncertain future.

## I. Applicable Law

¶ 31 An initiative that joins multiple subjects poses the danger of voter surprise and fraud occasioned by the inadvertent passage of surreptitious provisions coiled up in the folds of a complex initiative. *In re Proposed Initiative for 2007–2008 No. 17*, 172 P.3d 871, 875 (Colo.2007). Grouping the provisions of a proposed initiative under a broad concept that potentially misleads voters will not satisfy the single subject requirement. *In re Proposed Initiative for 1996 No. 4*, 916 P.2d 528, 532 (Colo.1996). Multiple provisions fall under a single subject only if they have a "necessary and proper relationship." *In re Proposed Initiative for 1997–1998 No. 74*, 962 P.2d 927, 929 (Colo.1998).

¶ 32 We reverse the Board's action in preparing a title and submission clause "if [it] contain[s] a material and significant omission, misstatement, or misrepresentation." *In re Proposed Initiative for 1997–1998 No. 62*, 961 P.2d 1077, 1082 (Colo.1998). We reject titles if they "create confusion and are misleading because they do not sufficiently inform the voters" of important aspects of the initiative. *In re Proposed Initiatives for 2001–2002 Nos. 21 & 22*, 44 P.3d 213, 221 (Colo.2002).

¶ 33 We must ensure that the Board's title and submission clause enable "informed voter choice." *In re Proposed Initiative for 1999–2000 No. 29*, 972 P.2d 257, 266 (Colo.1999). The titles and summary must "convey to voters the initiative's likely impact." *In re Proposed Initiative for 1999–2000 No. 37*, 977 P.2d 845, 846 (Colo.1999). They must protect against "public confusion," *In re Proposed Initiative for 1999–2000 No. 25*, 974 P.2d 458, 465 (Colo.1999), and "enable the electorate, whether familiar or unfamiliar with the subject matter of a particular proposal, to determine intelligently whether to support or oppose such a proposal." *In re*

*Proposed Election Reform Amendment*, 852 P.2d 28, 33 (Colo.1993).

## II. Initiative # 89 Contains Multiple Subjects

¶ 34 Initiative # 89 contains at least two separate and distinct subjects that are not necessarily and properly related to one another, nor do they function as mere "implementation" details of one another, as the majority suggests. *See* Maj. op. ¶ 16. I discuss each of the separate subjects contained in the initiative in turn.

### A. Converting "Colorado's Environment" into "Common Property" and Imposing a Public Trust

¶ 35 Initiative # 89 would first declare that "Colorado's environment is the common property of all Coloradans" and that "Colorado's environment [includes] its clean air, pure water, and natural and scenic values." The initiative then proposes to establish within Colorado's Bill of Rights a public "right" to the environment as a common property right: "The people of the State of Colorado, including future generations, have a right to Colorado's environment."

¶ 36 While undefined in the initiative, the ordinary meaning of "common property" is: "1: land in which all members of the community hold equal rights; 2: land or other property in which a person other than the owner holds certain rights in common with the owner." *Webster's Third New International Dictionary* 459 (1971). The term has a slightly different meaning as a legal term of art: "1. Real property that is held by two or more persons with no right of survivorship. Cf. joint property. 2. Common area." *Black's Law Dictionary* 315 (9th ed.2009) (listing the definition of "common property" under the entry for "property"). Under either definition, common property is distinct from the traditional "bundle of sticks" property rights held by private or local government entities in the state. Initiative # 89 thus seeks to create a totally new type of public ownership in the environment that is foreign to Colorado's legal heritage.

¶ 37 Throughout its history, Colorado has balanced private ownership or use rights in property and natural resources with corresponding public regulation of such property and use rights. *See, e.g.,* Colo. Const. art. 16, § 5 (providing for private appropriation of the public's water resources); § 37–92–101, C.R.S. (2013) *et seq.* (providing for priority administration of water rights within the state); § 25–8–101, C.R.S. (2013) *et seq.* (providing for regulation of water quality within the state). Colorado law also provides for voluntary private conservation mechanisms outside of the more traditional regulatory schemes. *See, e.g.,* § 39–22–522, C.R.S. (2013) (providing for conservation easements to promote "natural and scenic values" on private property; landowners who voluntarily place permanent restrictions on the development of their property may qualify for tax credits); *see also* Patricia Templar Dow, *The Unique Benefits of Conservation Easements in Colorado,* Colo. Lawyer (Dec.2001). Such laws extensively protect the public interest in Colorado's environment, and, at the same time, allow for the use and development of natural resources on private and publicly owned lands. Our local, state, and national economies depend on this measured balance between regulation and development. Initiative # 89 proposes to supplant this private ownership/public regulatory scheme by abridging private property rights to create a superseding "common property" right.

¶ 38 To implement this new "common property" right, Initiative # 89 would also mandate: "state and local governments shall conserve Colorado's environment . . . for the benefit of all the people" "as *trustees* of this resource." (emphasis added). The initiative does not elaborate on the nature of this purported trust, but under general principles of trust law, trustees owe fiduciary duties to the beneficiaries, including the duty to protect the trust property against damage or destruction. George T. Bogert, *Trusts* § 1, 582 (6th ed.1987). The trustees are "obligated to the beneficiar[ies] to do all acts necessary for the preservation of the trust [property] which would be performed by a reasonably prudent man employing his own like property for purposes similar to those of the trust." *Id.* § 582. If the trus-

tees breach their duties, the beneficiaries would have standing to seek remedies, including injunctions, in court. *Id.* § 861. In the context of Initiative # 89, this means that state and local governments would regularly be sued from all angles—by the public to enforce their "common property" rights in the environment and by private property owners when their rights are abridged thereby. *See* Colo. Const. art. II, § 15 ("Private property shall not be taken or damaged, for public or private use, without just compensation.").

¶ 39 We have previously held that an initiative to enact the "Colorado public trust doctrine" in water contained a single subject, where the initiative's proposed subsections had "the single distinct purpose of describing a new legal regime . . . that would govern the public's rights in waters of natural streams." *In re Proposed Initiative for 2011–2012 No. 3,* 2012 CO 25, ¶ 16, 274 P.3d 562 (quotations omitted). The initiative in that case proposed a public trust only in Colorado's water resources, which the state constitution since 1876 has declared to be the property of the public—with the important qualifier that private persons and public entities can establish use rights in this publicly owned resource. *See* Colo. Const. art. XVI, § 5.

¶ 40 While I am mindful of the court's approval of a single-subject public trust initiative in that case, I caution that Initiative # 89's public trust provision is far broader than the public trust proposed in 2011–2012. Initiative # 89 proposes to establish governmental trustee duties over *any and all aspects* of Colorado's environment, including air, water, and "natural and scenic values," which would include minerals, forests, prairie lands, and wildlife. *See* Michael C. Blumm & Aurora Paulsen, *The Public Trust in Wildlife,* 2013 Utah L.Rev. 1437, 1439–40 (2013) (explaining that many states that have embraced a public trust doctrine applicable to navigable waters have not embraced a public trust duty to protect other natural values such as wildlife).

¶ 41 Initiative # 89 proposes to create an entirely unprecedented form of public trust duty requiring state and local governments

to "conserve" what are predominantly privately held resources. As discussed above, the initiative would place all of "Colorado's environment" in trust, including "natural and scenic values" on both private and public lands. This is a quantum leap from the common law public trust doctrine, which only affects assets that are currently owned by the state or were conveyed subject to the public trust.[5] Initiative #89 would instead vest paramount ownership in private parties—Colorado's citizenry via the "common property" provision—and then impose trust duties on state and local governments to "administer" this property "for the benefit of all the people."

¶42 It is impossible to predict how the state and local governments would carry out their fiduciary duties as trustees for natural resources that are currently subject to private title or use interests. What one can discern is that Initiative #89 would essentially place Colorado's state and local governments in a new adversarial relationship with their individual citizens who are private property owners. This fundamental shift in the relationship between government and private citizens is plainly a subject unto itself; one that is not necessarily or properly related to the near-total abrogation of Colorado's preemption doctrines, as discussed below.

### B. Abolishing State Preemption of Conflicting Local Laws

¶43 In addition to the separate and distinct purpose of creating a new "common property" interest in Colorado's environment and imposing trust duties on state and local governments, Initiative #89 contains a second subject: it seeks to overhaul Colorado's existing preemption doctrines. Subsection (3) of the initiative would empower local governments to enact laws and regulations that are more restrictive than state laws and provides that the "more restrictive or protective law or regulation" would govern in the event of a conflict between any local and state laws.

This would mandate that any "more restrictive" local law would preempt an on-point state law, fundamentally altering the relationship between state and local governments over environmental regulation. A brief description of Colorado's existing preemption law helps illustrate how this is a separate and distinct purpose of Initiative #89.

¶44 Colorado's existing preemption doctrine establishes a priority system between potentially conflicting laws enacted by state and local governments. *Bd. of Cnty. Comm'rs v. Bowen/Edwards Assocs., Inc.*, 830 P.2d 1045, 1055 (Colo.1992). A court's preemption analysis depends on whether the local entity is a statutory municipality or county or a home-rule jurisdiction. A statutory municipality or county is created by the legislature as a political subdivision of the state. *Id.* As creatures of statute, they possess only the regulatory authority expressly conferred upon them by the constitution and statutes, plus any incidental implied powers necessary to carry out their express powers. *Id.* A state statute will preempt an enactment of a statutory municipality or county (1) if the state statute expressly provides that it preempts local authority over the subject matter; (2) if the state statute implies a legislative intent to completely occupy a given field due to the existence of a dominant state interest; or (3) a local law may be partially preempted by a state statute where its effect would conflict with the operational effect of a state statute. *Dep't of Transp. v. City of Idaho Springs*, 192 P.3d 490, 495 (Colo.App.2008) (citing *Bowen/Edwards Assocs.*, 830 P.3d at 1056–57).

¶45 Home-rule jurisdictions, on the other hand, adopt their own charters pursuant to Article XX, section 6 of the Colorado Constitution. They may generally enact any law within their boundaries that the state legislature could enact. Because home-rule land use authority is based in the Colorado Constitution, rather than statute, courts utilize a different four-part test when examining the

---

**5.** Indeed, public ownership is the root of the state's trust duties: "the power or control lodged in the State, resulting from this common ownership [of wildlife], is to be exercised, like all other powers of government, as a trust for the benefit of the people." *Geer v. Connecticut,* 161 U.S.

519, 529, 16 S.Ct. 600, 40 L.Ed. 793 (1896); *see also Summa Corp. v. Cal. ex rel. State Lands Comm'n,* 466 U.S. 198, 104 S.Ct. 1751, 80 L.Ed.2d 237 (1984) (holding that the state's public trust powers and duties were limited to lands it owned in its sovereign capacity).

validity of a local ordinance or regulation that potentially conflicts with a state law. *Colo. Mining Ass'n v. Bd. of Cnty. Comm'rs of Summit Cnty,* 199 P.3d 718, 723 (Colo.2009). This test examines (1) whether there is need for statewide uniformity of regulation; (2) whether the municipal regulation has extra-territorial impact; (3) whether the subject matter is one traditionally governed by state or local government; and (4) whether the Colorado Constitution specifically commits the particular matter to state or local regulation. *Id.* In matters of purely local concern, both home-rule jurisdictions and the state may legislate, but when a home-rule ordinance or charter provision and a state statute conflict over a local matter, the home-rule provision prevails. *City of Northglenn v. Ibarra,* 62 P.3d 151, 155 (Colo.2003). In matters of purely state concern, enactments of the Colorado General Assembly will generally prevail over municipalities'. *Voss v. Lundvall Bros., Inc.,* 830 P.2d 1061, 1066 (Colo.1992). In matters of mixed state and local concern, both state and local enactments may coexist as long as they do not conflict. *Id.*

¶ 46 Initiative # 89 would abolish the important distinction between statutory municipalities and home-rule jurisdictions by vesting them both with new and equal power to preempt state-level environmental laws. For statutory municipalities, this would allow them to regulate far in excess of their legislatively-enumerated powers. For home-rule jurisdictions, this would vastly extend their powers to regulating matters of statewide concern. This is in direct contravention of the legislature's perceived incremental efforts to rein in home-rule jurisdictions' powers. *See, e.g.,* § 24–68–105(1), C.R.S. (2013) (providing that no home-rule jurisdiction may impair vested property rights). Moreover, Initiative # 89 would change the scope of judicial review of preemption cases from a case-by-case, fact-specific analysis to a rigid "which law is more restrictive" inquiry.

¶ 47 Triggering this tectonic shift in the relationship between the state and local governments, and the scope of judicial review of their actions, is plainly a separate and distinct purpose of Initiative # 89; one that is not necessarily or properly related to the creation of a new "common property" interest in the state's environment and the imposition of an expansive public trust doctrine. Each of these purposes could be effected individually in separate initiatives; the enactment of one is in no way dependent on the enactment of the other. Accordingly, I would hold that Initiative # 89 violates the single-subject requirement and that the Title Board erred in setting the title for the initiative.

## III. The Title and Submission Clause Will Mislead Voters

¶ 48 In addition to Initiative # 89's single-subject violations, the Title Board's setting of the title and submission clause for the initiative was also improper because the title and submission clause will mislead voters. The legislature has commanded the Title Board to set clear titles and submission clauses for initiatives. Specifically, section 1–40–106(3)(b), C.R.S. (2013), requires that titles "correctly and fairly express the true intent and meaning thereof" and that they "unambiguously state the principle of the provision sought to be added." The connection between the title and the subject of the initiative must be obvious and not rest upon a mere possible inference. *In re Proposed Initiative for 2009–2010 No. 45,* 234 P.3d 642, 647 (Colo.2010). When an initiative contains a single subject, this provision ensures that the voters properly understand that subject.

¶ 49 Even if Initiative # 89 contained a single subject—as the majority concludes—it would still have been impermissible for the Title Board to set a title for the initiative that inadequately informs the voters about that subject. As we have previously explained, we will reverse the Title Board's action setting a title and submission clause "if they contain a material and significant omission, misstatement, or misrepresentation." *In re Proposed Initiative for 1999–2000 No. 29,* 972 P.2d 257, 266 (Colo.1999); *In re Proposed Initiative for 1996 No. 17,* 920 P.2d 798, 803 (Colo.1996). Specifically, the title must provide voters sufficient information to determine intelligently whether to support or oppose the proposal. *In re Pro-*

*posed Initiative on Obscenity,* 877 P.2d 848, 850 (Colo.1994).

¶ 50 The title for Initiative # 89 does not meet these requirements because it does not disclose that the initiative would establish a new constitutional fundamental right to Colorado's environment. This is a material and significant omission that warrants reversal of the Title Board's action. Rather than disclosing that Initiative # 89 abrogates existing property rights by creating a superseding "common property" right, the title only reveals that Initiative # 89 is an amendment *"declaring* that Colorado's environment is the common property of all Coloradans." (emphasis added).

¶ 51 This language will not inform voters that the initiative will interfere with existing property rights because the word "declare" implies description, not prescription. While the word "declare" has many meanings, none of them imply the creation of new rights or duties. The ordinary meaning of the term "declare" includes "to make clear"; "to make known publicly, formally, or explicitly ... announce, proclaim, or publish esp. by a formal statement or official pronouncement"; "to make evident or give evidence of: serve as a means of revealing"; "to make a formal acknowledgement of" or "to state emphatically." *Webster's Third New International Dictionary* 586 (1971). Thus, under the common meaning of the word "declare," voters only declare things that are already true; a declaration does not effect a change in the status quo.

¶ 52 If the voters are not aware of the initiative's aim of establishing new legal rights that would totally transform property law in the state, they will lack sufficient information to determine intelligently whether to support or oppose the proposal. It is particularly important that voters understand that Initiative # 89 proposes to create new property rights that may interfere with existing private property rights and potentially create takings liabilities for state and local government "trustees." *See* Colo. Const. art. II, § 5 (requiring that compensation be paid to private property owners when their property is taken for public use). Ballot titles must convey to voters an initiative's

likely impact, *In re Proposed Initiative for 1999–2000 No. 37,* 977 P.2d at 846, and the title for Initiative # 89 is deficient for not alerting voters that the initiative proposes to affect property rights and potentially compromise the public fisc.

¶ 53 I also strongly disagree with the majority's conclusions that there is no danger that Initiative # 89 seeks to garner support from various factions by combining unrelated subjects in a single proposal, nor that it may surprise voters by burying hidden effects in complex language. *See* Maj. op. ¶ 18. Voters could potentially agree with the creation of a new "common property" right and accompanying public trust without also agreeing to abridge Colorado's longstanding preemption doctrines, or vice versa. According to the text of Initiative # 89 and its title and submission clause, voters cannot vote for one without voting for both. This is precisely the danger we warned of in *In re Proposed Initiative "Public Rights in Waters II",* 898 P.2d 1076, 1080 (Colo.1995). Further, the hidden effect of governmental takings liabilities is buried within the language of Initiative # 89 purporting to merely protect the "environment," rather than affect private property rights. For these reasons, I would reverse the Title Board's action setting the title and submission clause for Initiative # 89.

### Conclusion

¶ 54 I conclude that there are at least two separate subjects coiled up in the folds of Initiative # 89: (1) converting Colorado's environment into common property, thereby granting Colorado's citizenry new property rights to resources that are now privately owned and establishing a public trust enforcement duty over Colorado's entire environment; and (2) fundamentally shifting environmental regulatory power from the state to both categories of local government. The Title Board clearly erred in determining that the initiative satisfied this state's constitutional single-subject requirement.

¶ 55 The title set by the Title Board also threatens to confuse voters because it does not mention the drastic changes that Initiative # 89 would bring to Colorado property law. Voters would surely be surprised to

learn that they inadvertently passed an "environmental" initiative that also significantly weakens private property rights. Plus, voters could potentially support one of the subjects contained in Initiative # 89 without supporting the other. Therefore, I believe we have the duty under Article V, section 1(5.5), of the Colorado Constitution to reverse the Title Board's action setting the title for Initiative # 89. Accordingly, I respectfully dissent.

I am authorized to state that CHIEF JUSTICE RICE joins in the dissent.