In the MATTER OF the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR 1997–1998 No. 74:

Francis B. HOWES, III, Petitioner,

v.

Dan HAYES and Regina Macy, Respondents,

and

Rebecca Lennahan, Victoria Buckley, and Richard Westfall, Title Board.

No. 98SA146.

Supreme Court of Colorado,
En Banc.

June 15, 1998.

Rehearing Denied Sept. 8, 1998.

Susan E. Burch, Denver, for Petitioner.

Dan Hayes, Arvada, Pro se.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Paul Farley, Deputy Attorney General, Maurice G. Knaizer, Deputy Attorney General, State Services Section Denver, for Title Board.

Justice SCOTT delivered the Opinion of the Court.

Petitioner Francis Howes challenges the actions of respondents, members of the title board (Title Board) in setting the title, ballot title and submission clause, and summary of an initiative proposed by proponents Dan Hayes and Regina Macy, also respondents before us. We hold that the proposal submitted by Hayes and Macy embraces a single subject. Moreover, we hold that language approved by the Title Board fairly and accurately characterizes the proposal's content and is not likely to mislead or confuse voters. Therefore, we affirm the Title Board's actions.

## I.

The initiative submitted by Hayes and Macy, designated as "Initiative No. 74" by the Title Board, would amend the state constitution to impose a $7,500 "school impact fee" on each newly constructed housing unit. The fee revenue would be used to offset capital costs associated with the increased need for schools caused by the influx of school children that often accompanies new residential development. Issues related to payment of or exemption from the fee would be resolved by boards of education or by the voters through initiatives or referenda in the relevant school districts.[1]

The Title Board met and fixed a title, ballot title and submission clause, and summary for Initiative No. 74 on April 1, 1998.

1. The text of the initiative, along with the title, ballot title and submission clause, and summary

Howes filed a motion for rehearing on April 8. The Title Board denied the motion on April 15, and Howes timely sought review in this court on April 20, pursuant to section 1–40–107(2), 1 C.R.S. (1997).

## II.

### A.

Howes argues that the proposed initiative contains two distinct subjects in violation of the single-subject requirement of our state constitution. Article V, section 1(5.5) of the Colorado Constitution states, in relevant part,

> No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title.... If a measure contains more than one subject, such that a ballot title cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls.

Howes says Initiative No. 74 violates the single-subject requirement because in addition to creating a school impact fee, it would expand the initiative and referendum powers granted by Article V, section 1 of Colorado's constitution.

The single-subject requirement is intended to prevent voters from being confused or misled and to ensure that each proposal for change is considered on its own merits. *See* §§ 1–40–106.5(1)(e)(I) & (II), 1 C.R.S. (1997); *In Re Proposed Initiative "Public Rights In Waters II,"* 898 P.2d 1076, 1078–79 (Colo.1995) (discussing purposes behind single-subject requirement).

In light of these purposes, we have held that an initiative containing two or more provisions with no necessary connection or common objective offends the single-subject requirement even if all parts of the initiative address the same general area of law. *See Public Rights In Waters II,* 898 P.2d at 1080 ("[t]he common characteristic that the para-

prepared by the Title Board, are attached as an appendix to this opinion.

graphs all involve 'water' is too general and too broad to constitute a single subject").

■ On the other hand, the single-subject requirement does not preclude the use of provisions that are not wholly integral to the basic idea of a proposed initiative. The single-subject requirement must be liberally construed, however, so as not to impose undue restrictions on the initiative process. *See In Re Proposed Initiative On Parental Choice In Education,* 917 P.2d 292, 294 (Colo.1996). Multiple ideas might well be parsed from even the simplest proposal by applying ever more exacting levels of analytic abstraction until an initiative measure has been broken into pieces. Such analysis, however, is neither required by the single-subject requirement nor compatible with the right to propose initiatives guaranteed by Colorado's constitution.

■ An initiative with a single, distinct purpose does not violate the single-subject requirement simply because it spells out details relating to its implementation. As long as the procedures specified have a necessary and proper relationship to the substance of the initiative, they are not a separate subject. *See In Re Proposed Initiative 1996–6,* 917 P.2d 1277, 1279–80 (Colo.1996); *In Re Proposed Ballot Initiative For Parental Rights,* 913 P.2d 1127, 1130–31 (Colo.1996). The referenda and initiative provisions of Initiative No. 74 are directly tied to the substantive changes that are the central focus of the proposal. The initiative is not transformed into a multi-subject proposal simply because it specifies the mechanisms to be used to resolve issues related to the collection and distribution of impact fee revenue.

As the Title Board points out, moreover, school district initiatives and referenda are contemplated under existing law. *See* Colo. Const. Art. X, § 20(3),(4) (allowing school districts to hold elections for initiated or referred proposals for increased taxes, mill levies, and other revenue collection measures); § 1–41–103(4)(d), 1 C.R.S. (1997) (allowing submission of revenue proposals to voters of affected jurisdiction); § 22–42–

102(1), 7 C.R.S. (1997) (allowing school districts to refer bond issue proposals to voters); *see also* § 22–30–104(4), 7 C.R.S. (1997) (establishing procedures for placing initiated or referred proposals involving school districts on ballot).

The language in Initiative No. 74 merely clarifies that current law governing the use of initiatives and referenda would apply to policy decisions on school impact fees. We have little trouble concluding that this language, which simply provides a mechanism to administer the details of the impact fee proposal, embraces but a single subject. Reaching that result, however, our review is not at an end.

### B.

Even if the proposal addresses only one subject, Howes asserts, the title and ballot title and submission clause fail to express the subject of Initiative No. 74 "correctly and fairly" as required by section 1–40–106(3)(a), 1 C.R.S. (1997). Howes says the titles set by the Title Board do not accurately inform readers of the type of housing units that would be subject to the fee or the purposes for which impact revenue would be spent.[2]

The title and ballot title state that the school impact fee would be assessed on "all new housing units before occupancy." Howes points out, though, that the text of the proposal says the fees would apply to "a newly constructed housing unit before occupancy." Howes says a newly renovated apartment or apartment converted into a condominium would be a "new housing unit," but not "a newly constructed housing unit." In essence, he argues the titles suggest that the initiative covers a broader class of housing units than is actually the case.

Section 1–40–102(10), 1 C.R.S. (1997), provides that the title should be a "brief statement that fairly and accurately represents the true intent and meaning of the proposed text of the initiative." The statute directs the Title Board to consider the possibility of voter confusion when setting titles, but "the language employed by the Board in fixing a

---

**2.** Howes argued before the Title Board that the meaning of the term "school impact fee" is also unclear, but this argument has been abandoned in his briefs and pleadings before this court.

title will be rejected only if it is misleading, inaccurate, or fails to reflect the central features of the proposed initiative." *See In re Title, Ballot Title and Submission Clause, and Summary Regarding Petition Procedures,* 900 P.2d 104, 108 (Colo.1995); *see also* § 1–40–106(3)(b), 1 C.R.S. (1997).

It is well-established that the titles and summary need not spell out every detail of a proposed initiative in order to convey its meaning accurately and fairly. *See, e.g., In Re Initiative Statute Proposed By Arthur Apple And James Meeker (1996–17),* 920 P.2d 798, 803 (Colo.1996). The Title Board "is not required to ... describe every feature of a proposed initiative in the titles." *In Re Election Reform Amendment,* 852 P.2d 28, 33 (Colo.1993). Indeed, the point of the titles is to identify the proposal succinctly. The Title Board drafts a summary with additional detail. Only where the language chosen is "clearly misleading" will we revise the Title Board's formulation. *See In Re Proposed Ballot Initiative For Parental Rights,* 913 P.2d 1127, 1131 (Colo.1996).

■ Under these standards, we have no trouble upholding the Title Board's use of the phrase "all new housing units" without the qualification that only newly constructed units are covered. While the class of housing units covered by the titles may include some units not within the scope of the initiative's text, we find it highly unlikely that support for Initiative No. 74 would turn on whether it includes renovated apartments or condominiums, and Howes offers no explanation on this point.

■ Likewise, we are not persuaded that the titles are likely to mislead voters with regard to how revenue from the impact fee would be spent. The titles indicate that impact fee revenues will be used "for public school facilities." The text of Initiative No. 74 says the revenue would be used to construct, expand, upgrade, and equip public schools. Howes argues that the word "facilities" does not accurately describe the kinds of uses specified in the text.

At least one source cited by Howes— whose brief takes no consistent position on

the meaning of the word—indicates that a "facility" is "something that promotes the ease of an action, operation or course of conduct" or, alternatively, "something (as a hospital) that is built, installed, or established to serve a particular purpose." Webster's New Collegiate Dictionary 406 (1981). As we have discussed previously, the language used in the titles of an initiative is necessarily more general than the initiative's text. We are not persuaded that the use of the term "facilities" in lieu of a more specific enumeration of uses for school impact revenue has any substantial likelihood of misleading voters as to where the money would go.

### III.

We hold that the Title Board acted within the discretion granted by statute in setting the titles, submission clause, and summary of Initiative No. 74. The proposed initiative encompasses only one subject, as required by our state's constitution, and the language used by the Title Board in setting the titles fairly and accurately conveys the proposal's central ramifications. Accordingly, we affirm the Title Board in all respects.

### Appendix A

### PROPOSED INITIATIVE "1997—98 # 74" [1]

The title as designated and fixed by the Board is as follows:

AN AMENDMENT TO THE CONSTITUTION OF THE STATE OF COLORADO CONCERNING SCHOOL IMPACT FEES, AND, IN CONNECTION THEREWITH, ASSESSING A SEVEN THOUSAND FIVE HUNDRED DOLLAR SCHOOL IMPACT FEE ON ALL NEW HOUSING UNITS BEFORE OCCUPANCY; REQUIRING THAT THE IMPACT FEE BY USED FOR PUBLIC SCHOOL FACILITIES NECESSITATED BY THE INCREASED STUDENT POPULATION FROM NEWLY CONSTRUCTED HOUSING UNITS; AND ALLOWING A SCHOOL DISTRICT BOARD OF EDUCATION, OR A SCHOOL

1. School Impact Fees

DISTRICT INITIATIVE OR REFEREN-DUM, TO ADJUST THE AMOUNT OF THE FEE AND CREATE EXEMPTIONS THEREFROM.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT TO THE CONSTITUTION OF THE STATE OF COLORADO CONCERNING SCHOOL IMPACT FEES, AND, IN CONNECTION THEREWITH, ASSESSING A SEVEN THOUSAND FIVE HUNDRED DOLLAR SCHOOL IMPACT FEE ON ALL NEW HOUSING UNITS BEFORE OCCUPANCY; REQUIRING THAT THE IMPACT FEE BY USED FOR PUBLIC SCHOOL FACILITIES NECESSITATED BY THE INCREASED STUDENT POPULATION FROM NEWLY CONSTRUCTED HOUSING UNITS; AND ALLOWING A SCHOOL DISTRICT BOARD OF EDUCATION, OR A SCHOOL DISTRICT INITIATIVE OR REFERENDUM, TO ADJUST THE AMOUNT OF THE FEE AND CREATE EXEMPTIONS THEREFROM?

The summary prepared by the Board is as follows:

This measure requires that a seven thousand five hundred dollar fee be imposed upon all newly constructed housing units prior to occupancy. It also specifies that the fee shall be used only to construct, expand, upgrade, or equip public schools, as necessitated by the increased student population from such housing units. The measure allows the board of education of a school district, or a school district initiative or referendum, to make exemptions from the fee, change the amount of the fee, and otherwise affect payment issues regarding the fee, upon passage of an initiative or referendum.

The measure would have no fiscal impact on state government because the impact fees are collected and spent at the local level, and revenues from the fees will not affect the amount that the state contributes to local school districts.

The measure would have a significant positive fiscal impact on school districts, although the extent of such impact is indeterminate because the amount the measure will generate for school construction, and the districts in which housing growth will occur, cannot be predicted with any certainty. However, if the collection of school impact fees causes a school district to exceed its spending limit under article X, section 20 of the state constitution and the district has not obtained voter approval to collect and spend revenues in excess of the spending limit, the district would be required to refund all moneys collected that exceed the spending limit.

Hearing adjourned April 1, 1998, 4:50 p.m.

April 15, 1998 Rehearing

Francis B. Howes, III Motion denied.

Rehearing adjourned 4:46 p.m.