489 P.3d 1217
In the MATTER OF the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE FOR 2021-2022 #16
Janie VanWinkle, Carlyle Currier, Chris Kraft, Terri Diane Lamers, William Hammerich, and Joyce Kelly, Petitioners
v.Alexander Sage and Brent Johannes, RespondentsandTheresa Conley, David Powell, and Julie Pelegrin, Title Board.
Supreme Court Case No. 21SA125 Supreme Court of Colorado.
June 21, 2021
Attorneys for Petitioners: Recht Kornfeld, P.C., Mark G. Grueskin, Denver, Colorado
Respondents Alexander Sage and Brent Johannes, pro se, Boulder, Colorado
Attorneys for Title Board: Natalie Hanlon Leh, Chief Deputy Attorney General, Michael Kotlarczyk, Assistant Attorney General, Peter G. Baumann, Campaign Finance Enforcement Fellow, Denver, Colorado
En Banc
JUSTICE HOOD delivered the Opinion of the Court.
¶1 In this opinion, we review the actions of the Title Board ("Board") in setting the title and ballot title and submission clause (collectively, "titles") for Initiative 2021-2022 #16 ("Initiative 16"). Initiative 16 proposes to amend Colorado's criminal animal cruelty statutes. Among other changes, it would (1) end certain exemptions for livestock, (2) create a safe harbor for the slaughter of livestock with various conditions, and (3) expand the definition of "sexual act with an animal" (a type of animal cruelty).
¶2 We conclude that Initiative 16 contains at least two subjects, which violates the single-subject rule of article V, section 1(5.5) of the Colorado Constitution. Although the central theme of the initiative is incorporating livestock into the animal cruelty statutes, redefining "sexual act with an animal" strays into a second subject by addressing the bodily integrity of all animals, not just livestock. Because these subjects are not necessarily and properly connected, there is the potential for the very kind of voter surprise against which the single-subject requirement seeks to guard – here, voters might not understand that what is nominally a livestock initiative also affects the care of all animals, or vice versa. We therefore reverse the actions of the Board.
I. Facts and Procedural History
¶3 Respondents, Alexander Sage and Brent Johannes, submitted Initiative 16 to the Board, which is responsible for "fix[ing] a proper fair title for each proposed law ..., together with a submission clause." § 1-40-106(1), C.R.S. (2020). The Board ruled that the initiative concerns a single subject and set titles.
¶4 Petitioners, Janie VanWinkle, Carlyle Currier, Chris Kraft, Terri Diane Lamers, William Hammerich, and Joyce Kelly, filed a motion for rehearing. See § 1-40-107(1)(a)(I), C.R.S. (2020). They argued that Initiative 16 contains three subjects: the removal of livestock exemptions from the animal cruelty statutes, a requirement that livestock live a quarter of their initiative-defined "natural lifespan[s]" before they can be slaughtered, and an expansion of the definition of "sexual act with an animal." They also claimed that the initiative's titles were misleading and contained impermissible catch phrases.
¶5 The Board tweaked Initiative 16's titles but reaffirmed the single-subject ruling.1 Two of its three members, however, acknowledged that the single-subject issue was "close." Rehearing on Proposed Initiative 2021-2022 #16 before the Title Bd., at 1:25:53, 1:26:54 (Apr. 7, 2021), https://csos.granicus.com/MediaPlayer.php?view_id=1&clip_id=213 [https://perma.cc/B7T8-Q72L] (statements of David Powell and Theresa Conley).
¶6 Petitioners filed this original proceeding to challenge the Board's decision, see § 1-40-107(2), renewing their arguments that Initiative 16 spans multiple subjects and that the titles include impermissible catch phrases.
II. Analysis
¶7 We begin with the standard of review. Then, we discuss the single-subject requirement for initiatives. Finally, we describe Initiative 16 and analyze whether it contains multiple subjects. We conclude that it does.
A. Standard of Review ¶8 "We liberally construe the single subject requirement both because of the Title Board's considerable discretion in setting the title and the ballot title and submission clause and in order to avoid unduly restricting the initiative process." In re Title, Ballot Title & Submission Clause for 2019-2020 #315, 2020 CO 61, ¶ 17, ––– P.3d –––– ; see also § 1-40-106.5(2), C.R.S. (2020) ("It is the intent of the general assembly that section 1 (5.5) of article V ... be liberally construed, so as to avert the practices against which [it is] aimed and, at the same time, to preserve and protect the right of initiative ...."). ¶9 "We will therefore overturn the Board's finding that an initiative contains a single subject only in a ‘clear case,’ " In re 2019-2020 #315, ¶ 17 (quoting In re Title, Ballot Title, & Submission Clause for 2013-2014 #76, 2014 CO 52, ¶ 8, 333 P.3d 76, 79 ), and "we employ all legitimate presumptions in favor of the propriety of the Board's actions," In re Title, Ballot Title & Submission Clause for 2009-2010 #91, 235 P.3d 1071, 1076 (Colo. 2010). ¶10 "[I]n our limited review of the Title Board's actions, we do not address the merits of the proposed initiative." In re 2019-2020 #315, ¶ 8. Nor do we "determine the initiative's efficacy, construction, or future application, which is properly determined if and after the voters approve the proposal." In re 2009-2010 #91, 235 P.3d at 1076. "However, we must examine the proposal sufficiently to enable review of the Title Board's action." Id. "In conducting this limited inquiry, we employ the general rules of statutory construction, giving words and phrases their plain and ordinary meanings." In re 2019-2020 #315, ¶ 8.
B. The Single-Subject Requirement
¶11 The Colorado Constitution reserves the initiative power to the people but prohibits measures that contain multiple subjects: "No measure shall be proposed by petition containing more than one subject ...." Colo. Const. art. V, § 1 (5.5). "If a measure contains more than one subject, ... no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls." Id.; see also § 1-40-106.5(1)(a) (" Section 1 (5.5) of article V ... require[s] that every ... law proposed by initiative ... be limited to a single subject ....").
¶12 This prohibition exists
[t]o forbid ... the practice of putting together ... subjects having no necessary or proper connection, for the purpose of enlisting in support of the [initiative] the advocates of each measure, and thus securing the enactment of measures that could not be carried upon their merits. § 1-40-106.5(l)(e)(I). The single-subject requirement also "prevent[s] surprise and fraud from being practiced upon voters." § 1-40-106.5(1)(e)(II). ¶13 To decide whether an initiative addresses a single subject, we ask if its provisions are "necessarily and properly connected rather than disconnected or incongruous." In re 2019-2020 #315, ¶ 13 (quoting In re Title, Ballot Title & Submission Clause for 2015-2016 #73, 2016 CO 24, ¶ 14, 369 P.3d 565, 568 ); accord In re 2009-2010 #91, 235 P.3d at 1077 ("[W]hen an initiative's provisions seek to achieve purposes that bear no necessary or proper connection to the initiative's subject, the initiative violates the constitutional rule against multiple subjects."). "Said another way, the single-subject requirement is not violated unless the text of the measure ‘relates to more than one subject and has at least two distinct and separate purposes which are not dependent upon or connected with each other.’ " In re Title, Ballot Title & Submission Clause for 2005-2006 #74, 136 P.3d 237, 239 (Colo. 2006) (quoting In re Title, Ballot Title & Submission Clause, & Summary with Regard to a Proposed Petition for an Amendment to the Const. of State Adding Section 2 to Article VII (Petition Procs.), 900 P.2d 104, 109 (Colo. 1995) ). ¶14 Accordingly, "[w]e have held repeatedly that where a proposed initiative ‘tends to effect or to carry out one general objective or purpose,’ it presents only one subject." In re Title, Ballot Title & Submission Clause for 2017-2018 #4 , 2017 CO 57, ¶ 8, 395 P.3d 318, 321 (quoting In re Title, Ballot Title & Submission Clause, & Summary for 1999-00 #256, 12 P.3d 246, 253 (Colo. 2000) ). And "[a]n initiative proposing a comprehensive framework contains a single subject if all of its provisions relate directly to its single subject." In re 2009-2010 #91, 235 P.3d at 1076. Similarly, "an initiative will not be deemed to violate the single subject requirement merely because it spells out details relating to its implementation." In re 2019-2020 #315, ¶ 15. ¶15 "The [permissible] breadth of [an] initiative's objective, however, is not without limits." Id. at ¶ 16. "[W]here an initiative advances separate and distinct purposes, ‘the fact that both purposes relate to a broad concept or subject is insufficient to satisfy the single subject requirement.’ " In re 2009-2010 #91, 235 P.3d at 1076 (alteration omitted) (quoting In re Title, Ballot Title & Submission Clause, & Summary for 1997-1998 #64, 960 P.2d 1192, 1196 (Colo. 1998) ).
¶16 Finally, given the anti-logrolling and anti-fraud purposes of the single-subject requirement, our application of the necessarily-and-properly-related test has often taken into account whether voters might favor only part of an initiative and the potential for voter surprise. See, e.g., In re 2017-2018 #4, ¶ 14, 395 P.3d at 322 ; In re Title, Ballot Title, & Submission Clause for 2011-2012 #3, 2012 CO 25, ¶¶ 18-20, 274 P.3d 562, 567-68 ; In re 2009-2010 #91, 235 P.3d at 1079.
C. Initiative 16 Violates the Single-Subject Requirement
1. Initiative 162 ¶17 Initiative 16 would remove the animal cruelty statutes' exception for "accepted animal husbandry practices utilized by any person in the care of companion or livestock animals." See § 18-9-201.5(1), C.R.S. (2020). Similarly, the measure would end an exemption to certain sentencing provisions for "the treatment of livestock and other animals used in the farm or ranch production of food, fiber, or other agricultural products when the treatment is in accordance with accepted agricultural animal husbandry practices." See § 18-9-202(2)(a.5)(VII), C.R.S. (2020).
¶18 Initiative 16 would also enact a safe harbor, exempting the slaughter of livestock from section 18-9-202(1) of the animal cruelty statutes, which lists multiple forms of animal cruelty, under limited circumstances:
Any person who slaughters livestock in accordance with accepted agricultural animal husbandry practices does not violate the provisions of subsection (1) of this section so long as the animal has lived one quarter of their natural lifespan based on species, breed, and type of animal and the animal is slaughtered in such a way that the animal does not needlessly suffer.
(Emphases added.) The initiative defines "natural lifespan" as twenty years for cows, fifteen for sheep and pigs, ten for turkeys, eight for chickens, and six for ducks and rabbits.
¶19 Further, Initiative 16 would expand the definition of "sexual act with an animal," a type of animal cruelty, § 18-9-202(1)(a), which currently means "an act between a person and an animal involving direct physical contact between the genitals of one and the mouth, anus, or genitals of the other," § 18-9-201(5), C.R.S. (2020). The initiative would broaden that definition to include "any intrusion or penetration, however slight, with an object or part of a person's body into an animal's anus or genitals." It would also replace the definition's exception for "accepted animal husbandry practices," see id., with an exception for "dispensing care to an animal in the interest of improving that animal's health."
¶20 Petitioners contend that Initiative 16's central focus is removing the livestock exceptions from the animal cruelty statutes and that the measure addresses two additional subjects by creating a limited safe harbor for the slaughter of livestock and enlarging the definition of "sexual act with an animal." Respondents counter that Initiative 16 relates to one subject: animal cruelty. The Board maintains that the initiative covers the single subject of ending the animal cruelty statutes' exemptions for livestock and that the initiative's other provisions implement that central focus. ¶21 "We must examine sufficiently an initiative's central theme to determine whether it contains hidden purposes under a broad theme." In re Title, Ballot Title & Submission Clause, for 2007-2008, #17, 172 P.3d 871, 875 (Colo. 2007). Examining Initiative 16's text, we agree with Petitioners and the Board that the measure's central theme is to extend the animal cruelty statutes to livestock. Although Respondents now seek to characterize the initiative's theme more broadly, they told the Board that Initiative 16's single subject is "the removal of the exemptions that livestock have in the cruelty to animals statutes." Hearing on Proposed Initiative 2021-2022 #16 before the Title Bd., at 9:25 (Mar. 17, 2021), https://csos.granicus.com/MediaPlayer.php?view_id=1&clip_id=199[https://perma.cc/25S4-WHXA] (statement of Alexander Sage); see also About Ballot Initiative PAUSE , Colorado PAUSE, https://www.coloradopause.org/about (last visited June 15, 2021) ("The best initiative to write was clear and simple; extend the definition of animal cruelty to farmed animals."). ¶22 Moreover, "animal cruelty," the unifying label proposed by Respondents, is the type of overly broad theme that we've rejected. See, e.g., In re Title, Ballot Title & Submission Clause for 2015-2016 #132, 2016 CO 55, ¶ 34, 374 P.3d 460, 468-69 (rejecting "the overarching subject of ‘redistricting in Colorado’ "); In re 2013-2014 #76, ¶ 10, 333 P.3d at 79 ("The proponents attempt to unite these separate subjects under the description ‘recall of government officers’ in the title and submission clause. We have previously found such umbrella proposals unconstitutional."); In re 2009-2010 #91, 235 P.3d at 1080 ("[T]he broad purpose ‘to protect and preserve the waters of this state’ does not cure the multiple subject violation of Initiative # 91."); In re 2007-2008 #17, 172 P.3d at 875-76 ("[J]ust as ‘water’ was too broad a theme ... to unite multiple subjects into a single subject, so do ‘environmental conservation’ and ‘conservation stewardship’ fail to suffice here."). If such vague subjects were permissible, "incongruous and disconnected provisions could be contained in a single initiative and the very practices the single subject requirement was intended to prevent would be facilitated." In re 1997-1998 #64, 960 P.2d at 1200 (rejecting "the entire judicial branch" as a single subject).
¶23 We now examine whether the provisions identified by Petitioners are related to Initiative 16's central theme of expanding the animal cruelty statutes to include livestock.
2. The Safe Harbor Provision
¶24 We begin with the safe harbor provision, which would exempt from section 18-9-202(1) of the animal cruelty statutes the slaughter of livestock when it is done "in accordance with accepted agricultural animal husbandry practices," the animals have lived "one quarter of their natural lifespan[s]," and they don't "needlessly suffer."
¶25 Petitioners claim that ending the exemptions would affect "how animals are to be treated while they are alive," whereas the safe harbor concerns "what age an animal must reach in order to be lawfully slaughtered." They further assert that voters would be surprised to learn that, "by voting for better treatment, they are fundamentally altering when livestock may be slaughtered for food."
¶26 Respondents argue that these provisions address the single subject of animal cruelty because they amend the animal cruelty statutes and because the "killing of baby animals" is a form of animal cruelty.
¶27 The Board insists that the safe harbor rule is an "implementing provision[ ]" directly tied to Initiative 16's "central focus" of "the incorporation of livestock into the animal cruelty statutes." As the Board sees it, "[r]emoving any existing exemption for livestock ... may be interpreted to ban the slaughter of these animals," so "decriminalizing the slaughter of livestock once they have reached a certain age ... is directly related" to ending the exemptions. ¶28 Employing all legitimate presumptions in favor of the propriety of the Board's actions, we agree with the Board. The safe harbor provision seeks to implement the central focus of Initiative 16 by addressing when the slaughter of livestock would cross the threshold into animal cruelty after the livestock exceptions are repealed. ¶29 Although "[m]ultiple ideas might well be parsed from even the simplest proposal by applying ever more exacting levels of analytic abstraction," In re Title, Ballot Title & Submission Clause, & Summary for 1997-1998 No. 74, 962 P.2d 927, 929 (Colo. 1998), "[i]mplementation details that are ‘directly tied’ to the initiative's ‘central focus’ do not constitute a separate subject," In re Title, Ballot Title & Submission Clause, & Summary for 1999-2000 No. 200A, 992 P.2d 27, 30 (Colo. 2000) (quoting In re 1997-1998 No. 74, 962 P.2d at 929 ).
¶30 For example, an initiative that would have required doctors to disclose certain information to women before performing abortions addressed a single subject even though it also required data collection and reporting. Id. at 31. "[T]he physician data gathering requirement implement[ed] the informed consent purpose by reminding physicians ... to deliver the prescribed information to each patient," and "the physician reporting provision enforce [d] the informed consent requirement by requiring annual documentation ... of a physician's compliance." Id. That initiative was "not transformed into a multi-subject proposal simply because it specifie[d] mechanisms for carrying out [its] single subject." Id.
¶31 More recently, an initiative addressed the single subject of limiting housing growth where it would have "limit[ed] housing growth to one percent annually in ten jurisdictions until 2021 and prohibit[ed] permits for new residential housing units in the same jurisdictions until 2019"; "designate[d] who has authority ... to enact, alter, and repeal regulations on housing growth"; and "establishe[d] a signature requirement for proposals to regulate the growth of privately owned residential housing and outline[d] procedures for challenging signatures and the form and content of a petition." In re 2017-2018 #4 , ¶¶ 10-12, 395 P.3d at 321-22. These provisions addressed one subject because they " ‘tend[ed] to ... carry out the one general objective’ of limiting housing growth in Colorado," id. at ¶ 10, 395 P.3d at 321 (alteration omitted) (quoting In re 1999-00 #256, 12 P.3d at 253 ), or were "implementing provision[s] ... directly tied to the initiative's central focus," id. at ¶ 13, 395 P.3d at 322 (alteration omitted) (quoting In re Title, Ballot Title & Submission Clause for 2009-2010 #45, 234 P.3d 642, 646 (Colo. 2010) ).
¶32 Here, too, carving out a limited safe harbor tends to carry out and implement the general objective of Initiative 16. If the animal cruelty statutes were revised to cover livestock, a natural next question would be when, if ever, the slaughter of livestock would qualify as animal cruelty. The safe harbor provision aims to provide some guidance by clarifying that slaughtering livestock wouldn't count as animal cruelty under section 18-9-202(1)(a) if the animals have lived a minimum number of years and they're killed in accordance with accepted animal husbandry practices that don't cause needless suffering. Contrary to Petitioners' suggestion that such a safe harbor concerns the separate topic of livestock's deaths, a policy that prevents the killing of young livestock addresses the treatment of living animals. So, the safe harbor provision is necessarily and properly connected because it is an implementation detail directly tied to the initiative's central focus.3 ¶33 We also note that the safe harbor provision presents neither of the evils that the single-subject requirement aims to prevent. The risk of logrolling is low because ending the exemptions and creating the safe harbor "point in the same direction" of increasing the welfare of livestock, see In re 2017-2018 #4 , ¶ 14, 395 P.3d at 322, and thus don't "seek to garner support from various factions" with "different or conflicting goals," see In re Title, Ballot Title, & Submission Clause for 2013-2014 #89, 2014 CO 66, ¶ 18, 328 P.3d 172, 178. And the safe harbor provision wouldn't surprise voters because it "relates to the same subject" as ending the livestock exemptions, its "plain language" unambiguously proposes the safe harbor rule, and "the proposal is not particularly lengthy or complex." See id. at ¶ 19, 328 P.3d at 178.
¶34 Next, we examine whether Initiative 16 violates the single-subject rule by expanding the definition of "sexual act with an animal."
3. The Definition of "Sexual Act with an Animal" ¶35 Initiative 16 would amend the definition of "sexual act with an animal" to include "any intrusion or penetration, however slight, with an object or part of a person's body into an animal's anus or genitals" unless you're "dispensing care to an animal in the interest of improving that animal's health." Currently, the definition is limited to "an act between a person and an animal involving direct physical contact between the genitals of one and the mouth, anus, or genitals of the other," with an exception for "accepted animal husbandry practices." § 18-9-201(5). Engaging in a sexual act with an animal is one way to commit animal cruelty. § 18-9-202(1)(a).
¶36 Petitioners contend that this change isn't necessarily and properly connected to removing the livestock exceptions because "[o]ne issue concerns expanding the types of animals covered by [the animal cruelty statutes], while the other redefines a type of conduct that constitutes animal cruelty" for both livestock and other animals. They also argue that the initiative presents the "politically explosive topic" of sex with animals "to provide cover for their seemingly less politically compelling topic of treating livestock like pets." Finally, they say that voters "will be surprised to discover, in voting on a measure that is supposedly about ‘livestock,’ they actually approved a measure that covers the care of pets."
¶37 Respondents counter that "enhancing the illegality of sexual acts committed against animals" falls under the umbrella of amending the animal cruelty statutes.
¶38 The Board claims that this is another implementing provision because "specifically including livestock within the ambit of criminal animal cruelty statutes ... threatens to implicate many traditional or widely accepted agricultural or veterinary practices," including artificial insemination. According to the Board, amending the definition "clarif[ies] how the definition ... will apply to livestock." Further, the Board rejects Petitioners' logrolling argument because "[v]oters will either favor expanding the reach of [the animal cruelty] laws to criminalize a greater range of activity, or not."
¶39 Even applying the deferential standard of review for the consideration of the Board's single-subject decisions, we agree with Petitioners that this provision addresses a second subject. It doesn't clarify how "sexual act with an animal" would apply to livestock if the livestock exemptions were repealed, something that arguably would further Initiative 16's central focus. Instead, it would modify the standard of care for all animals by criminalizing new conduct, regardless of whether that conduct is directed at livestock or other animals.
¶40 By serving at least two distinct and separate purposes, Initiative 16 is analogous to the initiative that tried, impermissibly, to combine a tax credit with procedural requirements for future ballot titles, In re Amend TABOR 25, 900 P.2d 121, 125 (Colo. 1995) ; the initiatives that erroneously combined tax cuts with mandatory reductions in state spending, In re Title, Ballot Title & Submission Clause, Summary for 1997-98 No. 84, 961 P.2d 456, 460 (Colo. 1998) ; and the initiative that focused on the qualifications of judicial officers while also addressing the second subject of the number of judges in each district, In re 1997-1998 #64, 960 P.2d at 1197.
¶41 So, Initiative 16 fails to satisfy the single-subject requirement because expanding the definition of "sexual act with an animal" isn't necessarily and properly connected to the measure's central focus of incorporating livestock into the animal cruelty statutes. Indeed, notwithstanding the initiative's brevity, combining the repeal of the livestock exceptions with the criminalization of new conduct toward all animals "run[s] the risk of surprising voters with a ‘surreptitious’ change," see In re 2015-2016 #132, ¶ 26, 374 P.3d at 467 (quoting § 1-40-106.5(1)(e)(II) ), because voters may focus on one change and overlook the other, see In re 2013-2014 #89, ¶ 19, 328 P.3d at 178 ("Th[e] danger [of surprise] exists where an initiative, although claiming to have a single subject, in reality has multiple purposes, and as a result, voters would not expect that passing the initiative would lead to one or more of the initiative's outcomes.").
III. Conclusion
¶42 We reverse the Board's actions and return this matter to the Board with directions to strike the titles and to return the initiative to its proponents. Because we determine that Initiative 16 contains multiple subjects, we don't address whether the Board included impermissible catch phrases in the measure's titles.
APPENDIX A: Initiative 16
Be it enacted by the people of the state of Colorado:
Section 1. In Colorado Revised Statutes, 18-9-201, amend (2), (2.9), and (5) ; add (3.5) as follows:
18-9-201. Definitions
As used in this part 2, unless the context otherwise requires:
(2) "Animal" means any living dumb NON-HUMAN creature, including, BUT NOT LIMITED TO, A DOG, A CAT, A HORSE, LIVESTOCK, a certified police working dog, a police working horse, and a service animal as those terms are defined, respectively, in subsections (2.3), (2.9), (2.4), and (4.7) of this section.
(2.9) "Livestock" means bovine, camelids, caprine, equine, ovine, porcine, FISH and poultry.
(3.5) "NATURAL LIFESPAN" FOR THE FOLLOWING SPECIES SHALL BE EXPLICITLY DEFINED HERE BASED ON STATISTICAL ESTIMATES: A COW LIVES TO 20 YEARS, A CHICKEN LIVES TO 8 YEARS, A TURKEY LIVES TO 10 YEARS, A DUCK LIVES TO 6 YEARS, A PIG LIVES TO 15 YEARS, A SHEEP LIVES TO 15 YEARS, A RABBIT LIVES TO 6 YEARS.
(5) "Sexual act with an animal" means an act between a person and an animal involving either direct physical contact between the genitals of one and the mouth, anus, or genitals of the other. SEXUAL ACT WITH AN ANIMAL ALSO INCLUDES ANY INTRUSION OR PENETRATION, HOWEVER SLIGHT, WITH AN OBJECT OR PART OF A PERSON'S BODY INTO AN ANIMAL'S ANUS OR GENITALS. A sexual act with an animal may be proven without allegation or proof of penetration. Nothing in this subsection (5) shall be construed to prohibit ANY PERSON FROM DISPENSING CARE TO AN ANIMAL IN THE INTEREST OF IMPROVING THAT ANIMAL'S HEALTH __________.
Section 2. In Colorado Revised Statutes, 18-9-201.5, amend (1) and (3) as follows:
18-9-201.5. Scope of Part 2
(1) Nothing in this part 2 shall affect __________ the extermination of undesirable pests as defined in articles 7 AND 10, and 43 of title 35, C.R.S.
(2) In case of any conflict between this part 2 or section 35-43-126, C.R.S., and the wildlife statutes of the state, said wildlife statutes shall control.
(3) IN CASE OF ANY CONFLICT BETWEEN ANIMAL CARE OTHERWISE AUTHORIZED BY LAW, THIS PART 2 SHALL CONTROL. __________
Section 3. In Colorado Revised Statutes, 18-9-202, amend (1)(b), (2)(a.5)(VII), and (4); add (1.9) and (2)(a.5)(VIII) as follows:
18-9-202. Cruelty to animals - aggravated cruelty to animals
(1) (a) A person commits cruelty to animals if he or she knowingly, recklessly, or with criminal negligence overdrives, overloads, overworks, torments, deprives of necessary sustenance, unnecessarily or cruelly beats, allows to be housed in a manner that results in chronic or repeated serious physical harm, carries or confines in or upon any vehicles in a cruel or reckless manner, engages in a sexual act with an animal, or otherwise mistreats or neglects any animal, or causes or procures it to be done, or, having the charge or custody of any animal, fails to provide it with proper food, drink, or protection from the weather consistent with the species, breed, and type of animal involved, or abandons an animal.
(b) Any person who intentionally abandons AN ANIMAL __________ commits the offense of cruelty to animals.
(1.9) ANY PERSON WHO SLAUGHTERS LIVESTOCK IN ACCORDANCE WITH ACCEPTED AGRICULTURAL ANIMAL HUSBANDRY PRACTICES DOES NOT VIOLATE THE PROVISIONS OF SUBSECTION (1) OF THIS SECTION SO LONG AS THE ANIMAL HAS LIVED ONE QUARTER OF THEIR NATURAL LIFESPAN BASED ON SPECIES, BREED, AND TYPE OF ANIMAL AND THE ANIMAL IS SLAUGHTERED IN SUCH A WAY THAT THE ANIMAL DOES NOT NEEDLESSLY SUFFER.
(2) (a) Except as otherwise provided in subsection (2)(b) of this section, cruelty to animals, or cruelty to a service animal or certified police working dog or police working horse pursuant to subsection (1.5)(c) of this section, is a class 1 misdemeanor.
(a.5)
(VII) This subsection (2)(a.5) does not apply to the treatment of pack or draft animals by negligently overdriving, overloading, or overworking them, or the treatment of livestock and other animals used in the farm or ranch production of food, fiber, or other agricultural products when REGARDLESS OF WHETHER the treatment is in accordance with accepted agricultural animal husbandry practices, the treatment of animals involved in activities regulated pursuant to article 32 of title 44, the treatment of animals involved in research if the research__________ the treatment of animals involved in rodeos, OR the treatment of dogs used for legal hunting activities.__________
(VIII) THIS SUBSECTION (2)(a.5) DOES NOT APPLY TO THE TREATMENT OF ANY ANIMAL INVOLVED IN RESEARCH IF THE RESEARCH FACILITY IS OPERATING UNDER RULES SET FORTH BY THE STATE OR FEDERAL GOVERNMENT, WILDLIFE NUISANCES, OR TO STATUTES REGULATING ACTIVITIES CONCERNING WILDLIFE AND PREDATOR CONTROL IN THE STATE, INCLUDING TRAPPING.
(4) The short title of this section is "__________ WILBUR's Law".
Section 4. Effective Date:
This act takes effect April 1st 2023, and applies to offenses committed on or after said date.
Section 5. Severability:
If any provision of this Act or its application to any person or circumstance is held invalid, the invalidity does not affect any other provision or application of this Act that can be given effect without the invalid provision or application, and to this end the provisions of this Act are severable.
*new text in capitalized letters and text that is being eliminated in strikeout type
APPENDIX B: Initiative 16's Titles
Ballot Title Setting Board Proposed Initiative 2021-2022 #16
The title as designated and fixed by the Board is as follows:
A change to the Colorado Revised Statutes concerning expanding crimes relating to cruelty to animals, and, in connection therewith, expanding the definition of "livestock" to include fish; expanding the definition of "sexual act with an animal" to include intrusion or penetration, however slight, into an animal's anus or genitals with an object or part of a person's body and removing the existing exception for animal husbandry practices and creating an exception for care to improve the animal's health; defining the "natural lifespan" for certain species of livestock and providing that slaughtering those animals is not criminal animal cruelty if done according to accepted animal husbandry practices after the animal has lived 1/4 of the natural lifespan; removing the exception to the animal cruelty statutes for animal husbandry practices used in the care of companion or livestock animals; eliminating some exceptions to certain sentencing requirements; and providing that, in case of a conflict with animal care otherwise authorized by law, the criminal cruelty to animals statutes control.
The ballot title and submission clause as designated and fixed by the Board is as follows:
Shall there be a change to the Colorado Revised Statutes concerning expanding crimes relating to cruelty to animals, and, in connection therewith, expanding the definition of "livestock" to include fish; expanding the definition of "sexual act with an animal" to include intrusion or penetration, however slight, into an animal's anus or genitals with an object or part of a person's body and removing the existing exception for animal husbandry practices and creating an exception for care to improve the animal's health; defining the "natural lifespan" for certain species of livestock and providing that slaughtering those animals is not criminal animal cruelty if done according to accepted animal husbandry practices after the animal has lived 1/4 of the natural lifespan; removing the exception to the animal cruelty statutes for animal husbandry practices used in the care of companion or livestock animals; eliminating some exceptions to certain sentencing requirements; and providing that, in case of a conflict with animal care otherwise authorized by law, the criminal cruelty to animals statutes control?
1 We have appended Initiative 16's text and titles to this opinion.
2 We discuss only those provisions of Initiative 16 that are relevant to our resolution of the single-subject challenge, as framed by Petitioners.
3 We need not and do not address whether Initiative 16 would, as Petitioners and Respondents suggest, successfully criminalize all slaughter of livestock not done in conformity with the safe harbor provision. Our limited review of the Board's single-subject rulings concerns whether initiatives "contain separate and unconnected purposes," not their "efficacy." In re 1999-2000 No. 200A, 992 P.2d at 30 ; see also In re Title, Ballot Title & Submission Clause for 2015-2016 #63, 2016 CO 34, ¶ 14, 370 P.3d 628, 632 ("While Petitioners' objection arguably overstates the initiative's reach, our inquiry at this juncture avoids interpretation beyond that necessary to determine whether there is a single subject and clear title.").